[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 44 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 45 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 46 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 47 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 48 
The first question before us arises upon the provisions of the second section of the will. The original defendant, Mary Rodman, claimed one-half of the real estate here described, as the sole surviving child of Elizabeth Harvey, one of the testator's daughters, living at the death of Mrs. Prowitt. The same claim is continued by her descendants, who have now become the defendants in this action. The plaintiff, on the other hand, contends that Mrs. Prowitt, having survived her immediate offspring, her grandchildren took the remainder in fee simple, in the real estate described in the second section of the will. This is the precise proposition presented upon this branch of the case.
The claim of the appellants to the $5,000 bequeathed in the eighth section for the use of Mrs. Prowitt during her life, and, after her death, "to such children as should be living at the time of her death," is based upon the same idea. So is the claim to the $3,750 described in the same section and in nearly the same language. The three propositions present the same general question of the right of grandchildren to take and hold an estate limited by the expression "children living at the time of her death." In the consideration of this *Page 49 
question, as it arises under the second section of the will, certain qualifying expressions hereafter to be mentioned, it is supposed, may influence its decision. Upon the eighth section, the question is more sharply presented, although I consider these expressions wherever they may be found, as affecting the construction of the entire will.
The first suggestion that arises upon the examination of this will is the idea that the testator intended to make a disposition of all his property. After a pious ejaculation in behalf of his soul, he announces his intention to make a disposition of his "worldly estate and effects." After numerous specific dispositions, he closes his will by giving direction to "all the rest and residue" of his property. This language includes all his estate and all his effects. He did not intend to die intestate as to any part of it. (Merrill v. Jackson, 6 Johns. 191;Finlay v. King, 3 Peters, 379; Hogan v. Jackson, Cowper, 306.)
The next observation is, that the testator intended to make a reasonably equal disposition of his property between his three children. As the value of the real estate given for the benefit of each daughter is not stated in the will, this theory is to some extent conjectural. So far as sums are named they are equal, and there is nothing to indicate a preference for one daughter over her sisters, or an intention to give to one family a greater inheritance than to another. Mr. Harvey the husband of one of his daughters, was appointed a trustee and named as one of his executors, while. Mr. Prowitt, the husband of his daughter Mary, was evidently in low esteem with the testator, either from a want of affection for him or from a distrust of his financial capacity. So far as can be ascertained, however, from the terms of the will, this feeling extended only to exclude Mr. Prowitt from all management of or interference with the portion of the estate destined for his wife; but not to the diminution of her portion to the slightest extent. As to each daughter, he seems to have intended that she should have the benefit of one-third of his estate during her life, and that after her death the same share should go to the benefit of her family. *Page 50 
It may be observed also that the will was evidently drawn by a lawyer, but by one who did not apprehend the precise effect of the language he made use of, and who seems himself to have had a suspicion of the truth. In the absence of precise ideas, or of accurate language, he takes refuge in technicality and redundancy. Commonplaces and technicalities are curiously intermingled.
In illustration of this want of accuracy, as well as to show that the testator did not in fact intend to limit the property described in the second section to the immediate offspring of Mrs. Prowitt, but that the expression "children then living" meant her "lawful issue," I will here refer to some other expressions of the testator in the same section.
After disposing of the property during the life-time of his daughter Mary Prowitt, the testator gives it "to the use of all and every the child or children of my said daughter Mary Prowitt, lawfully to be begotten, then living." It is conceded in the case that Mary Prowitt had three children, all of whom had been begotten and born before this will took effect. It is conceded also that the expression, "to be begotten" does not in law cut off children theretofore begotten or born. Nevertheless the expression is inaccurate, as the testator wished his property to be for the benefit of the offspring of his daughter, already begotten and born, as well as those thereafter to be begotten. The claim was made in a case hereafter to be cited, that under such a clause, the trust would pass only to those begotten previously to the taking effect of this will, and was overruled in connection with the main question raised by the appellants, both objections being held to be unavailing. A few lines further on, the testator provides that if more than one child remains to Mrs. Prowitt "then to them their heirs and assigns forever, in equal parts to be divided, and to the several and respective heirs of the body and bodies of all and every such child lawfully issuing." A devise to the heirs and assigns as here first limited conveys a fee simple absolute, while a limitation to them and the heirs of their bodies as secondly described creates an estate tail. The two descriptions are used convertibly in the same *Page 51 
sentence, and apparently with no idea of a difference in their meaning. This language here as well as in the sentence commencing "and in case," which I will presently quote, was probably intended to express the idea that the children not only, i.e. the immediate offspring of Mrs. Prowitt, but the several and respective heirs, of the bodies of all and every such child or children being the lawful issue of Mrs. Prowitt, should be takers.
The testator then adds, "and I do accordingly," that is as he had just recited, that is to the heirs of the bodies of Mrs. Prowitt's children, give, devise, etc., to such children as she shall then have living.
Again, after reiterating that upon the death of Mary Prowitt, the estate in trust is for such children, as she shall then have living, the testator adds these words: "And in case any such child or children should happen to die before the decease of their said mother, leaving lawful issue, then I do give and devise the part or parts of such child or children so dying, unto the several and respective heirs of the body of all and every such child lawfully issuing, and to their several and respective heirs and assigns forever." Here is repeated the same confusion between the heirs and assigns of the children and the heirs of their bodies. The writer was apparently unconscious that this paragraph was any thing more than an elaboration of what preceded it. In my judgment it explains the intent of all the prior provisions respecting the descent to the issue of Mrs. Prowitt and effectually determines their character. It is a clear statement that the estate is not limited to the children of Mrs. Prowitt, who shall actually be living at the time of her death, that is to her immediate offspring, but that her "lawful issue" are the parties intended to take. It contemplates the death of some or all of the children of Mrs. Prowitt before her decease, and provides that their children should take the same benefit as would have been had by their parents, if they had outlived Mrs. Prowitt. I think there is no basis for the argument of the appellants, that this applies only to a case, where some of Mrs. Prowitt's children have died leaving issue, and others have survived her. There *Page 52 
is nothing to indicate such an intent or to justify such a construction.
And again, before closing this section, the testator, in providing that, upon failure of Mrs. Prowitt's issue, the estate should go to his remaining daughters, uses this language: "And, in case my daughter, Mary Prowitt, shall not leave a child living at the time of her death, then I give and devise all the said real estate and property so given and devised in trust for her use during her natural life, and to her children or child after her decease, to my daughter, Elizabeth Harvey, and my daughter Margaret," etc. The testator here evidently supposes that when he leaves the estate to the child or children of Mary Prowitt, living at the time of her death, he makes the same disposition as if he had left it to his daughter Mary and her children. He uses the two expressions in the same sentence and as meaning the same thing. He describes the estate "so given" as being in trust for Mrs. Prowitt during her life, and to "her children or child" after her decease. This would include the remoter descendants of Mrs. Prowitt. (See authorities, post.)
So in the use of the language employed in the fourth section of the will, in which his daughter Margaret is provided for, the same want of precision in the use of terms, and the same commingling of the different expressions to indicate the intended issue of his daughter, are to be found. He devises to his daughter Margaret, her heirs and assigns, certain premises on Partition street, in the city of New York, adding, but if my said daughter should "die unmarried, without leaving a child her surviving," then to his daughters Mrs. Harvey and Mrs. Prowitt. He adds, "but if my said daughter shall die either before or after my decease, leaving lawful issue," then I do give, etc., "unto such child or children;" and in case my said daughter Margaret shall die "without lawful issue," and either of my daughters, Mary or Elizabeth, shall be dead, then, etc. The limitation here first made is to "a child her surviving." In the same sentence, immediately following, and referring to the same posterity, "lawful issue" is the expression used; and thirdly, *Page 53 
"unto such child or children," still indicating the same descendants. All of these expressions are used to indicate the same offspring, and show that the testator used the three expressions convertibly. It is impossible to avoid this conclusion.
The influence of these considerations is not limited to the sections of the will in which the expressions occur. They shed a light upon the whole instrument. In my judgment they afford very strong reason to believe that, in all the dispositions of the will for the benefit of the children of Mary Prowitt, the $5,000 and the $3,750, as well as the real estate, the testator intended her lawful issue, and not her immediate offspring, as the objects of his bounty.
The clause of the second section authorizing the trustees to lease the brewery property, also confirms this construction. It was made lawful for the said trustees to lease the said property "from time to time, during the life of my daughter Mary Prowitt, and after her decease during the minority of the said child or children of my said daughter Mary Prowitt, or, who for the timebeing, shall by virtue of this my will, be entitled in possession etc." Power is here given, to lease, first, during the life-time of Mrs. Prowitt; second, during the minority of her child or children; third, during the minority of "who" or whosoever, for the time being should be entitled in possession. This is but a fair construction of this power. The word "or" is disjunctive, and applies to other objects than those already designated, to wit, the children of Mrs. Prowitt. Such persons must have been the remoter descendants of Mrs. Prowitt.
In relation to the $5,000, it is to be observed that unlike to the real estate, and unlike to the $3,750, there is no limitation over to any other branch of the family, in the event of the failure of the issue of Mrs. Prowitt. The language is to pay the same "unto such children or child as my said daughter Mary Prowitt, may have living at the time of her death, in equal parts to be divided, as they shall severally arrive at the age of twenty-one years, or marry, whichever shall first happen." It was the intent of the testator not to *Page 54 
die intestate as to any part of his property. I have already discussed this subject. Such intent comes strongly in aid of the respondent's claim, that the terms made use of were intended by the testator to embrace the remote issue of Mrs. Prowitt. Unless such is the construction, the testator died intestate as to this amount. (Royle v. Hamilton, 4 Vesey, 439.)
In my view of the language of this will, there is no such conflict between its different provisions as requires a determination that one part shall prevail over the other. The first principle is, that all parts shall be made operative, if possible, and it is only when the provisions are in irreconcilable conflict that it becomes necessary to say what part shall stand and what part shall fail. I think the testator intended that the remote descendants should be takers under the sections of the will which I have discussed, if there should be a failure of the immediate offspring of Mrs. Prowitt. The expressions "child or children then living, or child her surviving," should be so construed as to carry out this idea. This construction is in harmony with the general intent of the testator, in harmony with good sense and sound principles of justice, and is supported by high authority.
In Hart v. Tulk (19 Eng. L. and Eq. 438, 443), the word "fourth" was construed as if it had been dropped, or as if written "schedule," to prevent apparent caprice and injustice, and to make the will sensible and reasonable.
The English statute enacts that the father and grandfather of every poor person shall relieve and maintain such person. In commenting on this statute, Blackstone says (1 Com. 449), "no person is bound to provide a maintenance for his issue, unless where the children are unable to work," using the expressions "issue" and "children" as synonymous, and both applying to grandchildren as well as to children.
Chancellor Kent says in his commentaries (4 Kent's Com. 419,n.): "Children as well as issue may stand in a collective sense for grandchildren, where the justice or reason of the case requires it." *Page 55 
Although arguing strenuously against extending the signification of these words, Mr. Jarman says (chap. 30 of his work on wills, p. 73): "It should be observed, however, that in a considerable class of cases, the word `child' or `children' has received an interpretation extending it beyond its more precise and obvious meaning, as denoting immediate offspring, and been considered to be employed as nomen collectionem, or as synonymous with issue or descendants, in which general sense it has often the effect, when applied to real estate, of creating an estate tail." He adds: "Where this construction has prevailed, it has generally been aided by the context."
In the Earl of Tyrone v. Marquis of Waterford (1 De Gex, Fisher Jones, 637), Knight BRUCE, Ld. J., says: "The word `children' is a very flexible expression, and, according to a correct use of the English language, has more meanings than one. Authoritative writers, as well as the habits of educated society, show that an accurate speaker may, without impropriety, use the term `children' for the purpose of indicating offspring or descendants or posterity in whatever degree. If, therefore, in this will, we read the word `children' as equivalent to `issue' or `descendants,' we read it in one of the senses belonging to it, though not in that which is the most usual; nor are the instances few in which our courts of justice construing testamentary dispositions have so interpreted it. I agree that the word `children,' when used in a will for the purpose of indicating relationship and not age, must generally or universally, in the absence of an explanatory context or extraneous evidence, showing facts rendering it impossible, or at least very highly improbable, that it could have been used as what lawyers call a word of `purchase,' or as indicating offspring only in the first degree, be construed to be a word of purchase, and to mean only offspring in the first degree."
In Robinson v. Robinson (1 Burr. 38), the testator said: "I bequeath all my real estate to Lancelot Hicks, of Plymouth, during the term of his natural life and no longer, provided that he alter his name and take that of Robinson, and live at my house at Bochym; after his decease to such son *Page 56 
as he shall have, lawfully to be begotten, and for default ofsuch issue, then to my cousin." It was held by the house of lords, on appeal, that notwithstanding the words "during his life and no longer," Lancelot Hicks took an estate in tail male, although it was claimed that the devise to the son of the body of Lancelot Hicks was satisfied by the birth and death of his eldest son.
In Hodges v. Middleton (2 Doug. 431), the testator devised to Mrs. Middleton all her real estate "during her life, and at her death to her children; and in case of failure of children of Mrs. Middleton, to George Hodges," etc. Held, that this gave either an estate tail to Mrs. Middleton, or an estate for life with remainder in tail to her children — making the word children of the same effect as the word issue.
In Doe v. Webber (1 Bar. Ad. 713), the testator gave certain real estate to his "niece Mary Hills, her heirs, executors and assigns forever. And my will is that in case my niece Mary Hills shall happen to die and leave no child or children, then unto my niece Jane Barnes," etc. Held, that the words "child" or "children" were synonymous with "issue." Lord ELLENBROUGH says: "In this case it has been contended that the words `child' or `children' mean issue, and that the first devise is therefore either converted into an estate tail by the limitation over on Mary Hills dying and leaving no child or children, in which case the limitation over is a remainder and barred by the recovery; or if the first devise be conceded to be in fee, that the limitation over is too remote, as being an executory devise to take effect after an indefinite failure of issue. It is true (he proceeds) that the words `child' or `children' may mean issue, and where the intent requires it, the word `children' has not been confined to the immediate descents, though that is its ordinary and proper sense, but has been extended to all the descendants, as in Wilde's case (6 Coke, 17), etc. * * * And in the present case the words `child' or `children' must be construed to mean issue, because it is the manifest intention of the testatrix that Jane Barnes should not take in exclusion of any issue, however remote, of Mary Hills." This "manifest *Page 57 
intention" was made known by the words "child or children" only. The will contains no other expression of the testator's intention.
In Doe v. Simpson (3 Man. Grang. 929) the testator devised certain property to his son Dr. John Simpson, his heirs and assigns, forever, and added: "But if it shall happen that my said son, Dr. J.S., shall die without leaving any child or children, in that case I give and devise unto Mary and others," who were his illegitimate offspring. After making certain other provisions he adds that, if his present wife should leave no issue to inherit certain other property named, he gives it to Mary and the others, "as all the other property, above mentioned, given and bequeathed to my said son, Dr. J.S., in case he die without issue." Lord DENMAN, Ch. J., cites, with approval, the preceding observations of Lord ELLENBOROUGH, and adds, in relation to the clause last cited, "we consider this an interpretation, by the testator himself, of the word `children,' as used by him in the previous part of the will. It is as if he had said that, by the previous part of his will, he had given the property in dispute to his five natural children only in the event of Dr. John Simpson dying without issue, and he had not, in fact, said this, unless the word `children' be read, as we think it must be, as being synonymous with `issue.'"
In Hewett v. Ireland (1 P. Williams, 426) the objections were twofold; first, that children "to be begotten" did not include children in existence at the testator's death; second, that the remote descendants could not take. Lord Chancellor PARKER described the objections as "alike" and "equally unreasonable," and overruled them both.
In Parkman v. Bowdoin (1 Sumner, 368) a devise was to A for life, after his death to his second son B, and to his lawfully begotten children in fee simple forever; but in case he should die without lawfully begotten children to the other son of A (C), and to his lawfully begotten children in fee simple forever. At the time of making the will B had no children. Held, that B took a fee tail, with remainder to C, on an indefinite failure of the issue of B. Judge STORY, in *Page 58 
deciding this case, examines all the authorities, from Wilde'scase (6 Coke, 17) onward, holding the words "children" to be words of limitation, and not of purchase. He says: "To give any just effect, then, to the original devise, as well as to the devise over, the word `children' must be construed as meaning issue or heirs of the body. And although, in its primary sense, the word `children' is a descriptio personarum who are to take, there is not the slightest difficulty in giving it the other sense, where the structure of the devise requires it. There are many authorities to this effect in cases analogous to the present." The learned judge then examines and reviews the cases, a portion of which I have already called attention to. These authorities fully establish the two propositions for which the respondents contend:
1. That the term "children" may include issue however remote, and will be held so to include whenever the reason of the thing demands it.
2. In case of a contingent future gift to the children of a first taker, followed by a limitation over for want of such, the presumption is in favor of the first taker's posterity to his remoter descendants in preference to the donee over.
I have examined with care the cases cited by the learned counsel for the appellants, in the elaborate brief submitted with his argument. None of them seriously conflict with the general views I have laid down, although some of them would place greater restrictions upon the rule of construing the terms in question than would others. They all admit, as does the learned author of the work on wills above quoted, that when the evident intention of the testator requires it, or when the estate would fail if such were not the construction, that the words "child or children" are to be construed as meaning issue or remote descendants. Limiting the rule to this extent, the appellants' case cannot be sustained, as I have endeavored heretofore to establish.
The judgment should be affirmed, with costs to be paid to both parties from the fund.
All concur.
Affirmed. *Page 59