In the Matter of the Judicial Settlement of the Account of CHARLES K. PHIPARD, as Executor, etc., of HENRY RUTHER-FORD, Deceased.

CHARLES K. PHIPARD, as Executor, etc., and Others, Appellants; SIDNEY HARRIS, as Special Guardian of PHYLISS CLEMENTINA RUTHERFORD, Respondent.

First Department, March 8, 1918.

**Will construed — gift to " children " of testator's father's deceased brothers and sisters — when grandchildren of testator's cousins not entitled to share.**

Where a testator gave his residuary estate to the " children " of his father's deceased brothers and sisters share and share alike with a proviso that if any child of the father's deceased brothers or sisters shall have died before the testator leaving lawful children then the children of any deceased child shall receive the share its parent would have received, with a further proviso that if no child of the testator's father's deceased brothers or sisters should survive the testator the residuary estate should be divided equally between lawful children of the deceased children of the testator's father's brothers and sisters living at the time of his decease, the grandchildren of the testator's cousins should be excluded from participation in the residuary estate where issue of his father's brothers and sisters survived the testator.

The word " children " does not include grandchildren or remote descendants unless there is something in the will to show that the word was used in the broader sense.

CLARKE, P. J., dissented, with opinion.

APPEAL by Charles K. Phipard, as executor, etc., and others from parts of a decree of the Surrogate's Court of the county of New York entered in the office of said Surrogate's Court on the 19th day of April, 1916, settling the accounts herein.

*Charles Fox*, for the appellants Charles K. Phipard, as executor, etc., and others.

*Sidney Harris*, special guardian, for the infant respondent.

*Charles M. Bleecker*, special guardian for Elizabeth Hindmarsh, an incompetent.

DAVIS, J.:

The appeal is taken by certain legatees mentioned in the 8th or residuary clause of the will of Henry Rutherford,

deceased, and requires the determination of the meaning of the word " children " therein contained. The clause in question is as follows:

" *Eighth.* All the rest, residue and remainder of my estate of whatsoever kind or nature, I give, devise and bequeath to the children of my father's (James Rutherford) deceased brothers and sister, share and share alike, but if any child or children of my father's deceased brothers or sister shall have died before me, leaving lawful children, then the said children of any deceased child or children, shall have and receive the share which the deceased parent would have received had he or she survived me, but should it so happen that there should not survive me any child of my father's deceased brothers or sister, then I direct that my said residuary estate shall be divided equally between the lawful children of the deceased children of my father's brothers and sister, living at the time of my decease, share and share alike."

The surrogate construed the meaning of the word *children* so as to include grandchildren. The testator left him surviving no widow, no issue, no father, mother, brother or sister. His heirs and next of kin were the issue of his deceased father's brothers and sister.

I think the decree should be reversed as to the parts appealed from, and modified so as to exclude the grandchildren of testator's cousins from participation under the 8th clause. It was said in the case of *Davies* v. *Davies* (129 App. Div. 379, 382; affd., 197 N. Y. 598): " It has been long settled that the term ' children ' does not include grandchildren or more remote descendants, unless there is something in the will to show that the word was used in the broader sense," citing *Pimel* v. *Betjemann* (183 N. Y. 194). This rule of construction is also laid down in *Matter of King* (217 N. Y. 358, 361).

This will is quite definite as to what the testator meant when he used the word " children." At the end of the 8th clause he provided for the disposition of the estate in case his first cousins do not survive him. In that event, he directs an equal division of his estate between the children of his first cousins " *living at the time of my decease.*" I think it appears quite plain that testator had no intention to include grandchildren of his cousins under this clause of the will.

That part of the decree appealed from is reversed, with costs to all parties appearing and filing briefs herein payable out of the estate, and the proceeding remitted to the surrogate for further action in accordance with this opinion.

SCOTT, DOWLING and PAGE, JJ., concurred; CLARKE, P. J., dissented.

CLARKE, P. J. (dissenting):

This appeal involves the construction of the residuary clause in the last will of Henry Rutherford, who died leaving no lawful issue, no wife, no father, mother, brother or sister. The will disposed of a very considerable estate. The testator's father, James Rutherford, had two brothers, Robert and William, and one sister, Agnes Rutherford Gray, all of whom predeceased the testator.

These decedents all had children, some of whom also predeceased the testator, though not to his knowledge. Though the testator knew of the existence and family names of some of his cousins, who were scattered throughout England and the United States, he had no personal acquaintance with any of them except one first cousin, Thomas Rutherford, to whom he left a specific legacy of $50,000. The clause of the will giving rise to the controversy runs as follows:

" *Eighth.* All the rest, residue and remainder of my estate of whatsoever kind or nature, I give, devise and bequeath to the children of my father's (James Rutherford) deceased brothers and sister, share and share alike, but if any child or children of my father's deceased brothers or sister shall have died before me, leaving lawful children, then the said children of any deceased child or children, shall have and receive the share which the deceased parent would have received had he or she survived me, but should it so happen that there should not survive me any child of my father's deceased brothers or sister, then I direct that my said residuary estate shall be divided equally between the lawful children of the deceased children of my father's brothers and sister, living at the time of my decease, share and share alike."

Four children of the brothers and sister of James Rutherford were alive at the death of the testator, and they took their share under this clause, as did thirty grandchildren of said

brothers and sister, the latter, first cousins once removed of testator, taking because their parents, first cousins of the testator, had predeceased him. Upon objections filed to an accounting on the ground that under this clause they were entitled to a distributive share, six cousins twice removed were admitted to participation in the estate by the surrogate, who held that the word " children " should be construed to include descendants, and should not be taken in its primary sense according to the ordinary rule. The appeals affecting five of these cousins twice removed have been dismissed on consent. Should the construction of the surrogate be not sustained, the respondent Phyllis Clementina Rutherford, would be the only one of her class to suffer thereby.

Admittedly, the general rule is to the effect that the words " child " or " children " refer to descendants of the first degree, to the exclusion of the more remote. No contravention of that doctrine is needed to sustain the ruling of the surrogate, for the rule is not a strictly rigid one and the words may be taken to include grandchildren and even those more remote, as was stated by Chancellor KENT (4 Kent Comm. [13th ed.] *419), " children, as well as issue, may stand, in a collective sense, for grandchildren, when the justice or reason of the case requires it."

The cases cited by appellants undoubtedly decide that, under the particular circumstances presented to the court in each instance, the term should be taken in its primary and usual meaning, but in every one of these cited cases there also occurs the acknowledgment that the contrary may be the interpretation when such an intent can be gathered from the will itself or from the surrounding circumstances, and when justice or the reason of the thing demands such construction. In *Matter of King* (217 N. Y. 358) a testator bequeathed to a daughter the income of a trust fund with power of appointment by will in favor of her children and their issue, or, in case she had no child or issue, as she might direct. In default of such appointment, the fund was to go to her children and their issue, or in case she left no child or issue or husband, the fund was to revert to the estate of the testator " and be divided between and among all my other surviving children share and share alike in equal portions." The testator's

daughter exercised such power of appointment in favor of nephews, grandchildren of testator, who rejected the title gained through their aunt's will and claimed through the will of their grandfather, in order to escape payment of the income tax. The court balanced the two conflicting rules, *first,* that " the term ' children' may include issue however remote, and will be held so to include *whenever the reason of the thing demands it."* (*Prowitt* v. *Rodman,* 37 N. Y. 42, 58.) *Second,* " that the term ' children ' does not include grand-children or more remote descendants, unless there is something in the will to show that the word was used in a broader sense" (*Pimel* v. *Betjemann,* 183 N. Y. 194, 200), and stated that the " only reason of the thing " in the case before them that demanded that the word " children " should include grand-children was that, if such construction were placed thereon, the nephews would escape taxation on the transfer of the interest to them, and said that this reason was not convincing.

In *Pimel* v. *Betjemann* (183 N. Y. 194) a testator, having knowledge of the death of one of his children, directed his execu-tors " to pay to each of my children who shall have arrived at the age of 21 years, the sum of ($500) Five hundred dollars as soon after my decease as my executors conveniently can;" and the court held that it was a bequest to a class and indi-cated no intent upon the part of the testator that the issue of the deceased child should share and that a daughter of a deceased child was not entitled, under section 52 of title 1 of chapter 6 of part 2 of the Revised Statutes (2 R. S. 66),* relating to lapsed legacies, to the legacy her mother would have had had she lived. CULLEN, Ch. J., says: " Nothing is better settled in the law of wills than that the term ' children ' does not include grandchildren or more remote descendants, unless there is something in the will to show that the word was used in a broader sense," and stated that as the testator had known of his daughter's death he could have specifically included her child had he desired her to share in his estate. In the case at bar, the testator did not know that the respond-ent's parent had died. It may be noted, as illustrating the

---

*Now Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18), § 29, as amd. by Laws of 1912, chap. 384.— [REP.

lack of rigidity in the rule, that *Pimel* v. *Betjemann* was decided by a divided court, VANN, J., dissenting, BARTLETT and WERNER, JJ., concurring and saying: " The policy of the law, as shown not only by the statutes cited, but by the Statutes of Descents and Distributions, is to send the property of a decedent to his children, and, if they are dead, to his children's children."

In *Hurlbert* v. *Gerow* (148 App. Div. 378; affd., *sub nom. Hurlbert* v. *Hallock*, 208 N. Y. 633) the testator placed his residuary estate in trust to be divided into five equal shares, the income of one share to be paid to his daughter A. or her " children " for their support and maintenance, the income from the other four shares to be paid to four other children, and the provision for the disposition of the *corpus* of the trust directed a division among the other four children or to their issue without limitation, but in the case of A. directed the division of a one-fifth share " to the child or children of the said A. * * * living at the time of such division." The court held that a grandchild of A. was not entitled to take, and in laying down the rule that the general construction given to " children " did not include grandchildren, went on to say: " The dominating rule of interpretation is to give effect to the purpose the testator intended to accomplish by his will, and if the context shows that he expected the expression ' children ' was to receive a wider significance than it naturally implies, that meaning will be given to it, for all formal rules must yield to the fundamental one. In this case the will of the testator does not call for a construction extending the import of the expression." It will be seen that here the court decided upon the particular circumstances in the case before it.

In *Davies* v. *Davies* (129 App. Div. 379) the court decided that, in the case before it, the term " children " did not include the issue of a deceased child, and based its ruling upon the fact that throughout the will there was expressed on the part of the testator a clean cut distinction between child and grandchild. The court said: " Many cases can be cited that hold that where there is a clear intention that the testator's descendants shall take by one representation, the word ' issue ' or ' children ' will be considered to include

descendants, * * * but such a construction is only given where it is necessary to carry out the intention of the testator * * *."

To the same effect that the term " children " may include grandchildren, if such an intention can be gathered from other expressions or clauses in the will, was the case of *Matter of Truslow* (140 N. Y. 599).

In *Matter of Pulis* (220 N. Y. 196) CHASE, J., prefaces the opinion determining that in the particular case the word " children " did not include grandchildren or others more remote than descendants of the first degree by saying: " The intention of a testator as disclosed by his will and in the light of the circumstances surrounding him at the time it was made should, so far as consistent with the rules of law, control the courts in construing it. * * * If the intention of the testator is ascertained with reasonable certainty and the provisions of the will are valid it is quite unnecessary to discuss the decisions made in other cases."

Thus the cases supporting appellants' claim clearly recognize that there are exceptions to the general rule; and these exceptions are noted in the following cases:

In *Pfender* v. *Depew* (136 App. Div. 636) the will created a trust for the benefit of two daughters until their death or marriage and, upon the happening of either, the *corpus* of the estate of either daughter was to be held for the benefit of the other daughter, if living and unmarried, and upon the death or marriage of both daughters the *corpus* was to be divided among " my other children who may be surviving at the time, the child or children of any son or daughter who may have died before such contingency taking the share to which the parent, if living, would have been entitled." Mr. Justice SCOTT, examining the cases, stated: " The rule, however, is not inflexible, and there are many cases in which the word will be given a wider signification and read as standing in a collective sense for grandchildren or even more remote descendants," and decided that such construction was proper in the case before the court because there could be discerned without difficulty a very simple testamentary design " to distribute the estate among those who at that time would answer to the description of her heirs at law." He cited, among other

cases, *Prowitt* v. *Rodman* (37 N. Y. 42), in which a testator devised property to his daughter for life and, after her decease, to such children as should be living at the time of her death, with a devise over in default of such living children; and the court held that the word " children " included grandchildren and descendants more remote. The court there observed that the testator intended to make a reasonably equal disposition of his property, for its interpretation of the word " children " used the quotation from Kent's Commentaries above noted and cited the case of *Earl of Tyrone* v. *Marquis of Waterford* (1 De Gex, F. & J. 613) where it was held that " the word ' children ' is a flexible expression," and *Robinson* v. *Robinson* (1 Burr. 38), where the testator bequeathed all his real estate to one Hicks during the term of his natural life and no longer, and " after his decease *to such son* as he shall have, lawfully to be begotten, \* \* \* and for default of *such issue* then \* \* \* to my cousin; " and the House of Lords held that Hicks took an estate in tail-male, and other English authorities to the same effect.

In *Matter of Paton* (111 N. Y. 480) a clause of the will directed that after the death of the wife of a testator and the attainment by his youngest child of the age of twenty-one, the net proceeds of his estate should be divided " equally among the children I may then have, or those who may be legally entitled thereto." The court decided that, judging from the context, the testator must have contemplated the possibility of there being children entitled to share other than his immediate offspring and went on to say: " It is the province of the court, in the construction of a testamentary disposition of property, to effectuate the intention of the testator by giving that direction to the fund which, with all the light that may be cast upon the matter by the proofs, and from a fair reading and a reasonable interpretation of the writing, in all its parts, seems just. We may not make a will for him, nor thwart his manifest purpose; but if the will before us is equally susceptible of one or another interpretation, we should, on every principle of right, and within the spirit of all the authorities, give it that which is most equitable and consonant with the dictates of justice."

In view of the lack of knowledge on the part of the testator,

in the case at bar, of the individualities and circumstances of the members of his family, and considering the language of the will which provided against a failure on account of death of his cousins once removed, it does not seem to me to be a strained interpretation to hold that the testator intended to equally distribute his estate among all the descendants of his father's brothers and sister *per stirpes*. From this circumstance and from the fact that this respondent will be the only one to suffer by an adverse ruling, I think the case comes within the statement of the learned chancellor, " children as well as issue may stand, in a collective sense, for grandchildren, when the justice or reason of the case requires it."

The decree should be affirmed, with costs to all parties appearing and filing briefs payable out of the estate.

Decree reversed, with costs to all parties payable out of the estate, and proceeding remitted as stated in opinion.