Chief Judge Conway.
The testatrix, Margaret E. Villalonga, drew a will in December, 1923, two years prior to her death. Her will is brief, and provides as follows:
‘ ‘ Second : I give and bequeath One Thousand Dollars ($1,000.) in cash to my great-niece and namesake, Margaret Russel Graves.
‘ ‘ Third : I give and bequeath my opal and diamond ring to my niece, Matille Graves.
"Fourth : I give and bequeath my cluster diamond ring to my niece, Leah Peoples.
'‘Fifth : I give and bequeath my solitaire diamond ring, and my watch and chain to my granddaughter, Amy Villalonga.
“ Sixth: All the rest of my jewelry I direct to be divided as equally as possible between my two granddaughters, Jane C. Villalonga and Amy Villalonga.
‘ ‘ Seventh : I give, devise and bequeath all the rest, residue and remainder of my property, both real and personal, wheresoever the same may be found, to my executors, hereinafter *480 named, in trust, however, to keep the same invested, and pay over the income thereof to my son John L. Villalonga, during his life and upon his death the income to go to his wife, Constance C. Villalonga, and upon the death of both my son, John L. Villalonga, and Ms wife, I direct the principal to be paid over to any children surviving them, but in case no cMldren survive Mm, or his wife, I will and direct that the said property be distributed between the children of my nephew, R. F. Craves. ’ ’ (Emphasis added.)
The life beneficiaries had two daughters, Amy and Jane C. Jane C. did not survive the life tenants, but left a daughter, Jane T., who now claims that she is entitled to share equally in the remainder with Amy, her aunt. Amy contends that, as the sole surviving immediate offspring of the life tenants, she alone is entitled to the remainder given to the surviving “ children ’ ’ of the life tenants. Jane T., however, argues that she also is included in the word “ children” as the sole surviving child of Jane C. The resolution of this controversy depends upon the intention of the testatrix. When she gave the remainder to the surviving “ children ” of the life tenants, did she contemplate only surviving immediate offspring, or did she intend that surviving immediate offspring should share the remainder with children of predeceased immediate offspring?
In the leading case of Matter of Schaufele (252 N. Y. 65) we stated the rule thus: “ * * * grandchildren are never interpreted as children unless the will as a whole shows that unmistakable intent. The term can be so interpreted only when reason demands it [citing cases]. Before such a construction is justifiable, other expressions or clauses in the will must be found tending to contradict the use of a word which denotes immediate offspring, and to reveal a design to include descendants of a later generation” (pp. 67-68, emphasis added). The same rule of law is expressed in numerous other cases. (See Matter of Barnes, 2 N Y 2d 787; Matter of Watson, 262 N. Y. 284; Matter of Meng, 227 N. Y. 264, 272; Matter of King, 217 N. Y. 358, 361; Pimel v. Betjemann, 183 N. Y. 194, 200; Matter of Truslow, 140 N. Y. 599, 603; Matter of McKim, 115 Misc. 720, 722; Palmer v. Horn, 84 N. Y. 516, 521; Magaw v. Field, 48 N. Y. 668; Matter of Phipard, 182 App. Div. 357, 358, affd. 223 N. Y. 676; Davies v. Davies, 129 App. Div. 379. *481 382-383, affd. 197 N. Y. 598; Matter of Keogh, 126 App. Div. 285, 287; Matter of Breithaupt, 10 Misc 2d 954, 956; Matter of Greenberg, 198 Misc. 1079, 1081; Matter of Harris, 138 Misc. 287, 288.) Under these eases it is clear that we must reverse the orders below and hold that Amy Villalonga Whittemore is alone entitled to the remainder of the estate of Margaret E. Villalonga.
This will is a simple one, cast in ordinary language and not afflicted with the weakness of ambiguity. In the two instances where the testatrix refers to the primary remainderman, she describes that class as surviving “ children ” only. There is no interchangeable use made of the terms “ children ” and “issue.” Nor does the general distributive scheme disclose a testamentary purpose to benefit children of predeceased immediate offspring together with surviving immediate offspring of the life tenants. Moreover, the use by the testatrix of the terms “ granddaughter ” and “ granddaughters ” in paragraphs Fifth and Sixth denies force to the claim that when she said “ children ” she also meant to include certain grandchildren. There is nothing in this will to support the position of the respondent Jane T. Mann unless, as she strenuously argues, the presence of the gift over to collaterals in the event of a total failure of “ children ” is a sufficient indication of an intention to enlarge upon the primary meaning of the word “ children.”
The testatrix provided that ‘ ‘ in case no children survive him, or his wife [the life beneficiaries], I will and direct that the said property be distributed between the children of my nephew, R. F. Graves.” This provision, contends the respondent, is sufficient indication that the testatrix intended to give the word “ children ” a broader meaning than immediate offspring. The argument is made that if the testatrix intended “ children ” to mean only immediate offspring then, in the event of a total failure thereof, the whole of the remainder would go to collaterals to the exclusion of direct descendants of the testatrix. We are told that this could not have been the intent of the testatrix, and that, therefore, the word “children” must be held to include Jane T., the daughter of a deceased immediate child of the life tenants. Great reliance is placed upon the presumption against disinheritance of descendants in favor of *482 collaterals, particularly as expressed in the case of Prowitt v. Rodman (37 N. Y. 42). However, we are not persuaded either by respondent Jane T. Mann’s reasoning or by the authority cited in support thereof. It is of no moment what the intent of the testatrix would have been, or what would have been presumed concerning it, in the event there were no surviving immediate offspring. The controlling fact is that the life tenants' were survived by an immediate child, the appellant. That the testatrix might have intended to prefer great-grandchildren over collaterals does not at all lead to the conclusion that she intended to benefit a great-grandchild equally with her grandchild. The gift over to ■ collaterals here is inoperative, and, therefore, the presumption against disinheritance is not called into effect. Moreover, the presumption against disinheritance is- a mere rule of construction and, as is true of all such rules, may not properly be invoked or applied except where some ambiguity or lack of clarity requires its application for the purpose of resolving a doubt otherwise introduced by the terms of the will (Goodwin v. Coddington, 154 N. Y. 283, 286; Matter of Keogh, supra, p. 289). As we wrote in Matter of Bisconti (306 N. Y. 442, 445): “The application of the rules of construction of wills is for the purpose of determining the intent of the testator where that intent is not clearly expressed by the testamentary words, and the rules of construction are to be disregarded when the language is clear and definite. It is well established that rules of construction are merely subsidiary aids. (Matter of Watson, 262 N. Y. 284, 293, 294.) If intention of á will-maker is to be found in the words Used in the will and these are clear and definite there is no power -to change them (Matter of Watson, supra). As is stated "in Davids on the New York Law of Wills:'1 When intention can be ascertained as a fact from the instrument itself * * * ' there is no occasion for a presumption in respect thereof, and the decision should hot be affected by the rules in question. Hence the rules of construction are to be disregarded where the decedent’s intention is clearly or sufficiently manifest, or where the language of the instrument is plain and its meaning obvious;’ ' (Vol. I, § 491, p. 805; see Matter of Rollins, 271 App. Div. 982, affd. 297 N. Y. 612.) ” There is nothing unclear or ambiguous-here *483 as to. who is entitled to take the remainder. The testatrix has given it to the surviving “ children” of the life beneficiaries, and both under the law and the terms of this will “ children ” means immediate offspring.
The case of Prowitt v. Rodman (supra) does not dictate a different result. In that case this court said: “ In the case of a contingent future gift to the children of the first taker, followed by a limitation over, for want of such, the presumption is in favor of the first taker’s posterity to his remoter descendants in preference to the donee over ” (p. 58). However, in Prowitt there were no surviving immediate offspring of the first taker and the question was whether the property would go to remoter descendants of the life tenant or to her collaterals. Furthermore, in the Prowitt case the words “ children ” and “ issue ” were used interchangeably to refer to the same class, thereby resulting in a definite ambiguity as to the make-up of that class. Thus, in that case it was the uncertainty as to the class which required the application of a rule of construction, and the presumption against disinheritance was referred to because the question presented was whether collaterals should take pursuant to the substitutionary gift in preference to remote direct descendants. There was no suggestion whatever in the Prowitt case that the presence of a limitation over to collaterals per se warrants a broader construction of the word “children” than immediate offspring where there is otherwise no doubt that such is its significance. Soper v. Brown (136 N. Y. 244), also relied upon heavily by respondent Jane T. Mann, is concerned only with the meaning of the word “ issue ” and is not relevant here.
It may well be that in some cases the presence of a limitation over to collaterals may be a “ factor ” tending to indicate a testamentary intent to broaden the meaning of “children”. (Restatement, Property, § 285, comment f.) However, it is clear that the mere presence of such a provision does not in and of itself establish an “unmistakable” intent so to do in a case such as this, where there is otherwise not a fragment of a doubt; where there is a person in existence who answers the primary meaning and the gift over is inoperative; where other portions of the will support the primary meaning of *484 the word; and where there is nothing so unreasonable or unjust about the disposition so as to create grave doubt that such was the intention of the testatrix.
The fact that the disposition made in this will may not be in complete accord with individual notions of 'equitable distribution is not sufficient to warrant the interference of the courts. It is well settled that “ Language should not be strained, nor words given an unusual meaning, in order to work out a result favorable to the issue of a deceased child. * * * ” (Matter of Truslow, 140 N. Y. 599, 605). Of course, if the language employed “is equally susceptible of one or another interpretation, we should, on every principle of right, and within the spirit of all the authorities, give it that which is most equitable and consonant with the dictates of justice.” (Matter of Paton, 111 N. Y. 480, 486.) However, as already mentioned, there is no ambiguity in this will which would allow a different interpretation from that which we have given it. The word ‘1 children ’ ’ is not, in itself, ambiguous. Indeed, it has a very common and definite meaning upon which attorneys and their clients are entitled to rely when drafting wills. “ Children” means immediate offspring, and we reiterate the rule of the Schaufele case (supra, p. 67) that it will never be held to include grandchildren “ unless the will as a whole shows that unmistakable intent.” Only by so holding will there be the stability and consistency so essential to the law of wills if it is to accomplish its function.
The order should be reversed, with costs to all parties appearing and filing briefs, payable out of the estate.