Burke, J. (dissenting).
The question before this court on this appeal is whether the word “ grandchildren ” in a clause of the will of the testator directing the distribution of a remainder should be construed in its primary sense.
We agree with the dissenting Judge below that it is apparent that the testator intended that the word “grandchildren” should be construed in a secondary sense to include the descendants of deceased grandchildren. We think that the will discloses an intention to achieve equality of distribution on a stirpital basis for those of the testator’s blood.
The rule in this State is that the primary “ canon of construction * * * to which all others are subordinate, [is] that the intention of the testator is to be sought in all his words, and, when ascertained is to prevail”. (Matter of Beuchner, 226 N. Y. 440, 444 [1919].)
No controlling adjudication has been brought to our attention where a court of this State has construed the word £ £ grandchildren ’ ’ to include 11 great-grandchildren ’ ’, but ‘£ children ’ ’, when it is evident the testator so intended, has been construed in its secondary sense to include issue of a child who has died. (Prowitt v. Rodman, 37 N. Y. 42, 54, 58 [1867], citing 4 Kent’s Comm. 419, n.; Matter of Brown, 93 N. Y. 295, 300 [1883]; Matter of Paton, 111 N. Y. 480, 486-487 [1888]; Matter of Weil, 151 Misc. 841 [Surrogate’s Ct., Kings County, 1934], affd. 245 App. Div. 822, affd. 271 N. Y. 608.)
In Prowitt v. Rodman (supra) we stated that “the term 1 children ’ may include issue however remote, and will be held so to include whenever the reason of the thing demands it” (supra, p. 58). In that case the court noted that the will showed a disregard for technical meanings of terms. The same descendants were referred to as “ issue ” and “ children ”.
*282 In Matter of Weil (supra) the testator’s great-grandchildren were held entitled to share in a class gift to testator’s grandchildren. There the corpus of a residuary trust was to be divided upon death of an executor and upon the attainment of a designated great-grandchild’s majority, into shares equal in number to testator’s children then living and deceased children who left children. Such shares were directed to be paid to each living child and to each of the “ children ” of testator’s deceased children, i.e., to testator’s “grandchildren”. When the trust terminated there survived one child of testator, a child of a deceased child, and also a great-grandchild who was descended of a deceased grandchild and deceased child of testator. Although the will specifically referred elsewhere to a “great-grandchild ” of the testator, testator’s reference to grandchildren, i.e. “ children ” of a deceased child, was held to mean ‘ ‘ descendant ” or “ issue ’ ’ and to include great-grandchildren. The Surrogate (151 Mise. 841, 849, supra) noted that this court had stated that ‘11 The word ‘ ‘ children ” is a flexible expression, and we think that meaning should be preferred, when the reason of the thing sustains it, which permits the children of a deceased child to inherit. ’ (Matter of Paton, 111 N. Y. 480, 486.) ”
Matter of Villalonga (6 N Y 2d 477, 480) which this court decided recently did not change that rule because the court in that case found that “ There is no interchangeable use made of the terms ‘ children ’ and ‘ issue. ’ Nor does the general distributive scheme disclose a testamentary purpose to benefit children of predeceased intermediate offspring together with surviving immediate offspring of the life tenants” (p. 481). We pointed out (p. 483) that “ in the Prowitt case the words ‘ children ’ and 1 issue ’ were used interchangeably to refer to the same class, thereby resulting in a definite ambiguity as to the make-up of that class. Thus, in that case it was the uncertainty as to the class which required the application of a rule of construction ’ ’.
The significance of these cases is that all recognize the criteria that this court has adopted and applied in construing wills wherever similar language has been used. We believe that the language used by Judge Rapallo in the Brown case (supra, p. 300) is apposite here. He wrote in that case that “ It is not reasonable to impute to the testator the intention to exclude *283 wholly from the inheritance, the descendants of either of his daughters
The language of the will and the circumstances here dictate a like conclusion. In 1892, the date of his will, as in 1898, when he executed his codicil, the testator had four children living, viz., three daughters, Catharine, Helen and Harriet, and a son, Benjamin, and also five grandchildren, two being children of Benjamin and three being children of Helen.
Harriet, who was in her fortieth year and unmarried in 1898, was the last of testator’s children to die. She died without issue at the age of 100 in 1959.
The provisions of the will which throw light on the testator’s intentions are:
“ 5. I direct and devise to my said Trustees the house and lot known as No. 107 Miller Avenue Brooklyn together with the lots adjoining thereto, to hold the same at their discretion, for the use of my daughter Catharine, during her life, and I also direct that my said Trustees, shall retain so many securities, belonging to my Estate, as they shall deem necessary to produce an annual income, sufficient for the comfortable support of my said daughter, which Income, I direct my said Trustees to apply to the support of my said daughter Catharine. And at the death of my said daughter Catharine to divide the principal together with all accumulated Income, equally among all my children Helen, Benjamin and Harriet and in case of the death of any of my said children before the death of my said daughter Catharine, I direct the share or shares of those so dying, to be equally divided among the descendants of the one so dying.” (Emphasis added.)
“ 6. I give, bequeath and devise one third of the remainder of all the property both Real and personal of which I shall die seized and possessed or to which I shall be entitled to my son Benjamin Welles and I do hereby order and direct my said Executors, in order to ascertain the said share of my son Benjamin to treat and consider the securities held in Trust by my said Trustees under said Ante Nuptial agreement and bond, as required by the foregoing provisions of this my said Will, as an advancement by me to my said son, and to be taken as a part of the one third hereby devised to him.
*284 “ 7. All the Best, Besidue and Bemainder of nay property, both Beal and personal, I hereby give, bequeath and devise to my said Trustees hereinafter named in Trust nevertheless, to divide the same into two equal parts, and to hold one part thereof in trust for my daughter Helen S. Kingsland, and the other part thereof, in trust for my daughter Harriet, as hereinafter provided and in making such division I order and direct, my said Trustees to charge and consider the amount given by me to my said daughter Helen, at the time of her marriage and amounting, as charged to her on my books to the sum of Fifty Thousand Dollars as an advancement and as a part of her one half of my residuary estate And to pay over the Income of said one half part to my said daughter Helen, during her life and at her death to divide the principal, so held in Trust for my said daughter, equally among all the children of my said daughter and to pay over the same to them as they respectively arrive at the age of Twenty One years.
‘ ‘ 8. I direct my said Trustees, to pay the Income of the remaining one half of my said Estate, to my daughter Harriet, during her life, and at her death, to divide the principal equally among all the children of said daughter Harriet, should she marry, and have any born to her and to pay over the same to them as they reach the age of Twenty-one years respectively.
“In the event of either of my daughters, Helen or Harriet, or my son Benjamin, dying without issue, him or her surviving them, I direct my said Trustees to divide the amount so held In Trust, for the benefit of the one so dying, equally among all my grandchildren then living, and to pay the said shares, to said grandchildren as they respectively arrive at the age of Twenty one years. It being my Express wish, that my property shall be enjoyed by those of my own blood.” (Emphasis added.)
Upon the death of Harriet in 1959, three grandchildren survived, viz., the two children of Benjamin and one of Helen’s three children.
The two grandchildren who predeceased Harriet each had a child or children who were living at Harriet’s death. Those children are great-grandchildren of the testator.
The courts below did not, in our opinion, accord sufficient weight to the obvious fact that when the will is read as a whole it does not disclose any intention to discriminate among the *285 grandchildren or their families. They give no reason why any family whose head, a grandchild of the testator, might fail to survive a child of the testator, should be disinherited. There is nothing in the will which can be deemed to neutralize the presumed intent of the testator to avoid disinheritance.
In this will, as in Prowitt v. Rodman (supra), there is a disregard for technical meanings and here the manner of the use of the words “descendants”, “issue” and “children” throughout the will is significant.
The testator provided that the remainder of his son’s ante-nuptial trust should go to his son’s “ descendants that the remainder of Catharine’s trust should be distributed equally among his other three children if living, and the share of any deceased child “to be equally divided among the descendants of the one so dying ”; and that the respective remainders of the trusts for Helen and Harriet should be distributed equally among “ all of the children ” of each. Then the testator designated his “grandchildren” “then living” as contingent remaindermen of each of said trusts upon the death of the life beneficiary ‘ ‘ without issue ’ ’.
Such use of the words “descendants”, “issue” and ‘‘ children ’ ’ seem to us to reflect a stirpital scheme in the context in which they appear. They indicate a desire to equalize the distribution of his estate among his children and their respective descendants. This desire for equality is emphasized by the ultimatum “ that my property shall be enjoyed by those of my own blood ”.
In the face of a testamentary scheme which favored a stirpital plan, which would achieve equality of distribution, and in the light of an expressed emphatic preference for his own blood and the interchangeable use of the words of art “children”, “ descendants ” and “ issue ”, we do not think that the words “ then living ” should be interpreted so as to disinherit a line of testator’s descendants and upset the scheme for the equal enjoyment of his estate. The particular clause in which the words “ then living ” is used is inconsistent with its predecessor clauses in its employment of the word “ issue ” and the limitation ‘ ‘ then living ’ ’ side by side and is internally contradictory in announcing an expressed wish (without limitation) that the property shall be enjoyed by those of his “ own blood ”. The *286 ambiguity presented can hardly be resolved in favor of a discrimination which is not confirmed by any other language in the will when the expressed intent to benefit blood members of the family, if construed to mean all members, fits naturally into the testamentary scheme and is entirely consistent with the concern shown by testator for his descendants in the predecessor clauses (see Restatement, Property, §§ 285, 291). We conclude, therefore, that it was the intention of the testator taken from the will as a whole, to benefit equally the families of his descendants and that he intended to use the words “ grandchildren ” in these circumstances in a sense which would include his great-grandchildren. In this unusual case the testator obviously did not and could not allow for the longevity of Harriet. He did not intend, we are sure, that two of the five branches of the testator’s direct descendants should be disinherited simply because the heads of those two branches failed to outlive a centenarian.
Accordingly, the order of the Appellate Division should be reversed, with costs payable out of the estate to all parties.
Judges Froessel, Van Voorhis and Foster concur with Judge Dye ; Judge Burke dissents in an opinion in which Chief Judge Desmond and Judge Fuld concur.
Order affirmed, etc.