In the Matter of the Estate of Sherman McNeil, Deceased. Hazel M. Hill, as Executrix of Sherman McNeil, Deceased, Respondent; Charles B. Russell, as Special Guardian for Dianne McNeil and Others, Infants, Appellant.

Third Department, March 13, 1963.

*Van Ness & Russell* (*Charles B. Russell* and *Robert M. Douglas* of counsel), for appellants.

*Briggs, Wilson & Tomasi* for respondent.

BERGAN, P. J. One of the main problems in this will construction proceeding is whether the words " children " and " nephews and nieces " used in testator's will included the children of deceased children and children of deceased nephews and nieces. The Surrogate held they did not.

Paragraph Fifth of the will provides: " Fifth. All of the remainder of my property shall be divided by my executor into a number of shares equal to the number of brothers or sisters surviving me and the number of deceased brothers or sisters who have left children surviving them and I give, devise and bequeath the said remainder as follows ".

Two shares he directed to be held in trust, one for the life benefit of an unmarried sister; one for the life benefit of a

married brother who had children. Upon the sister's death the remainder of her trust went to "my nephews and nieces"; upon the death of the brother the remainder of his trust went to "his children". There then followed this paragraph: "One (1) share to the children of each deceased brother and sister, such share to be divided equally among his or her children respectively."

At the time of testator's decease all of his five brothers and his only sister had died. Each of the five brothers left children surviving them. At the time of testator's death some of these children had died and left surviving children, i.e., grandchildren of testator's brothers.

It has been held, variously, that grandchildren are "never" included in the place of deceased children unless the will as a whole "shows that unmistakable intent" (*Matter of Schaufele*, 252 N. Y. 65, 67); and that "Children as well as issue may stand in a collective sense for grandchildren, where the justice or reason of the case requires it" (*Prowitt v. Rodman*, 37 N. Y. 42, 54, quoting Chancellor KENT).

In *Matter of Paton* (111 N. Y. 480) it was noted, as it had been in *Prowitt* that the word "children" is a flexible expression and "that meaning should be preferred, when the reason of the thing sustains it, which permits children of a deceased child to inherit" (p. 486).

As Judge DESMOND noted in his dissent in *Matter of Villalonga* (6 N Y 2d 477): "New York cases can be cited on either side of this question, but the great majority of them apply the broader meaning" (p. 486). When *Matter of Villalonga* is analyzed it will be seen that decision turned upon the fact there was there no evidence in the will of intent to use the word children in any broad sense. The word "children" was used in a simple context, the majority noted (p. 481), without any indication in "the general distributive scheme" to benefit children of immediate offspring (p. 481). Further, in *Villalonga*, the testatrix used "granddaughters" in the will itself where she elsewhere referred to them. The case ultimately turned, as all will construction cases do, on the "intention of the testatrix" (p. 480).

Here we have a direction that the remainder shall be divided into a "number of shares" equal to "the number of brothers and sisters surviving me" and "the number of" deceased brothers or sisters who left "children surviving them". This is literally a share for each group where a brother or sister survived or where there had been a survivor of a brother or sister.

The shares are created and established according to the " number of " family groups which qualify, and not by whether the children who survive the brother or sister also survive the testator. It is in the light of this testamentary arrangement as to the purpose of the shares that " one share to the children of each deceased brother and sister " must be read. In our view it includes the children of such children who are deceased.

There are a number of cases on this subject in New York. Some of the leading authorities seem to favor the construction we make. In *Matter of Brown* (93 N. Y. 295) RAPALLO, J., noted of somewhat similar language: " If, however, this language is capable of any construction which would permit the issue of the deceased son to participate in the remainder ＊ ＊ ＊ that construction should, on well-settled principles, be adopted in preference to one which should exclude them " (p. 299). See, e.g., *Scott* v. *Guernsey* (48 N. Y. 106); *Matter of Blodgett* (250 App. Div. 324, 331, 332); *Matter of Stecher* (190 Misc. 502), in which the Surrogate carefully examined the applicable rule of construction; and *Matter of Hart* (185 Misc. 791). Some cases suggesting a narrower reading of the word " children " are *Matter of King* (217 N. Y. 358); *Matter of Woodward* (117 N. Y. 522); *Matter of Phipard* (182 App. Div. 357, affd. 223 N. Y. 676.)

The testamentary arrangement before us may be regarded as a " family gift ", a term referred to in some of the New York Surrogates' decisions applying to a method of distribution among groups of relations of blood or affinity. " In the circumstances " noted FEELY, S., in *Matter of Hart* (*supra,* p. 793) " these features indicate testatrix probably meant there should be a ' family ' or per stirpes division of the bulk of her estate among this preferred group; and in the context quoted above she used the word ' children ' in the broad sense of ' descendants ' or ' heirs '."

We are strengthened in this view to include as beneficiaries children of children of deceased brothers or sisters by the fact that the family itself, those who would benefit by the Surrogate's construction of the will, neither urged it before the Surrogate himself nor now defend it on appeal.

The construction we adopt, the Surrogate's opinion notes, " is strongly urged upon us by both the executrix and the special guardian."

There was no other appearance before the Surrogate although all interested parties had been cited; and on appeal from the decree no interested party has appeared to suggest the decree be affirmed.

Although, of course, the Surrogate is required to construe the will according to his own judgment even if no interested party seeks the construction he evolves, some consideration to the position of all interested parties ought to be given in interpreting an intrafamily testamentary disposition, especially since, after a decree of construction is rendered and the rights resulting from it have become crystallized, no interested party defends it on appeal.

The often-quoted expression of Chancellor KENT here seems particularly appropriate. " Children as well as issue, may stand, in a collective sense for grandchildren, when the justice or reason of the case requires it." (4 Kent, Commentaries [14th ed.] 419; see *Prowitt* v. *Rodman,* 37 N. Y. 42, *supra.*)

One other problem of construction remains. In setting up the number of shares for testamentary distribution, the testator used a basis of computation (i.e., the number of brothers or sisters surviving him and number of deceased brothers or sisters who left surviving children) which would literally result in creating five shares.

He disposed, however, of seven shares; but as to two of them, one for a sister and one for a brother for life in trust, both beneficiaries predeceased testator.

The Surrogate in construing this apparent ambiguity held that there should be six shares, eliminating one share which provided that after the decease of the life beneficiary the remainder would go to the children of that beneficiary. This share was eliminated because the Surrogate was of opinion that it was not the testator's intention that the children of such deceased brother would get two shares, one from the residue of this trust and one from the general distribution as children of a deceased brother.

But as to the remainder of the trust for the unmarried sister, it was held by the Surrogate this share was to be counted and distribution made to the nephews and nieces of testator.

A simpler construction, and the one in our view more consonant with the testator's intention, would be to follow literally the five shares set up in the paragraph by which the shares were established and to disregard the surplus number disposed of by later clauses in the will, since in any event that surplus number is now academic and five shares will carry out exactly what testator seems to have had in mind.

The decree should be modified in accordance with this opinion to provide for the disposition suggested by the special guardian for appellants and as modified affirmed, with costs to appellants payable from the estate. The order should be settled on notice.

COON, GIBSON, REYNOLDS and TAYLOR, JJ., concur.

Decree modified in accordance with opinion to provide for the disposition suggested by the special guardian for appellants and as modified affirmed, with costs to appellants payable from the estate. Settle order on notice.