In the Matter of the Judicial Settlement of the Account of JAMES L. TRUSLOW et al., as Surviving Executors, etc.; JOSEPHINE C. B. CANFIELD et al., Appellants; GILBERT POTTER, Respondent.

P. died leaving a widow and three children him surviving. By his will he gave his residuary estate to his executors to sell and convert into money, to invest $120,000 and apply the income to the use of his widow during life, to divide the remainder into three equal shares, and apply the income of a share to the use of each child during life. The will then directed that the $120,000, at the death of the wife, should be divided into three equal shares, one to be designated and set apart for each of the children. Upon the death of a child "leaving issue," the trustees were directed to pay to "such issue" the capital of the share held "in trust for the use of the parent so dying." If either of said children should die and "leave no issue surviving them," the capital of such

share was directed to be divided among the "surviving children equally." If at the death of the testator or his widow either of the children "shall have died leaving issue" surviving him or the widow, the trustees were directed to distribute among such issue equally "the share that would have been set apart for the use of the parent, if he or she had survived" the testator or his widow. If either of his children died before the testator leaving no issue, the executors were directed to divide the residuary estate into two equal shares and designate one for the use of each of the surviving children, and hold the same upon the trust previously created. The will also contained a provision disposing of the estate in case of the death of the testator's wife and all of his "children and their descendants" before him. After the testator's death, and before the death of the widow, one of the children died leaving two children; then another died leaving no child. Thereafter the widow died, leaving one child of the testator and the two grandchildren surviving. *Held*, that the word "children" was used in the will in its primary sense and so did not include grandchildren, and, therefore, upon the death of the testator's child, who died childless, the fund set apart for her went to the surviving child, and the two grandchildren were not entitled to participate therein; but that as to the trust fund held for the widow, it was the testator's intent if, before her death, a child died leaving issue who survived her, that such issue should take what the parent would have taken if surviving; and so, that the grandchildren were entitled to one-half of such fund.

(Argued December 20, 1893; decided January 16, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 28, 1893, which reversed a decree of the Surrogate's Court of the county of Kings construing the will of Gilbert Potter, deceased, in connection with a judicial settlement of the accounts of his executors.

Gilbert Potter died in Brooklyn, in 1883, leaving a widow, two daughters, named Mrs. Beard and Mrs. Curtis, and a son named Gilbert. Mrs. Beard had two children, who were testator's only grandchildren. By his will, he devised his residence, and certain land connected therewith, to his executors, in trust to apply the net rents and income therefrom, or, if in the exercise of their discretion, and with his wife's consent, they should sell the same, then, the income of the invested proceeds of the sale, to the use of his wife for life. After

her death the said real estate, or the proceeds thereof, were to form a part of the residue of his estate and to be held under the same trusts. All the rest of the estate, real and personal, his executors were directed to turn into money. Thereof, they were to invest the sum of $120,000 and to apply the income to the use of the widow for her natural life. The remainder they were to divide into three parts or shares, and they were to hold one for each of the children and to apply its income to the use of the child during his or her life. Then follow the testamentary provisions which call for construction and application, because of events happening after the testator's death:

" And upon the further trust, at the decease of my said wife, to divide the aforesaid sum of one hundred and twenty thousand dollars, into three equal parts or shares and designate and set apart one for the use of each of my three children and apply the income arising from each to the use of the child for whom it shall have been designated during his or her natural life.

" Upon the death of either of my children leaving issue, I authorize, empower and direct my Executors and Trustees to pay to such issue equally the Capital of the share held by them in trust for the use of the parent so dying; but if either of my said children shall die and leave no issue surviving them, I direct my said Executors to pay, divide and distribute the Capital of the share held for the use of the one so dying, to and among my surviving children equally.

" If at my decease or at the decease of my wife either of my children shall have died leaving issue surviving me or surviving my wife, I direct my Executors to pay, divide and distribute to and among such issue equally, the share which would have been set apart for the use of the parent, if he or she had survived me or had survived my wife, such payments and distribution to be made by my Executors and Trustees to, and among, such issue as and when they respectively attain the age of twenty-one years. But if either of my children shall die before me, leaving no issue surviving me, then I

direct my Executors to divide the residue of my estate, into two equal shares and designate one for the use of each of my surviving children, and hold the same upon the trusts hereinbefore created and declared, unless," etc.

First, after testator's death, died Mrs. Beard, leaving two children, and next died Mrs. Curtis, leaving no child. When the testator's widow died, subsequently, there survived her, of testator's descendants, his son, Gilbert, and two grandchildren, the issue of his daughter Mrs. Beard.

The surrogate, in construing this will, held that the grandchildren were not limited to the shares appointed for their mother in the testator's estate, but took one-half of the shares which were given and intended in trust for Mrs. Curtis therein. This view he entertained from regarding the word "children" as including the issue of deceased children. The General Term reversed his decree in that respect and held that Gilbert took both shares appointed to Mrs. Curtis, as being testator's sole surviving child. The grandchildren are appellants to this court.

*Charles W. Truslow* for appellant. There was a clear general intention upon testator's part that the issue of a deceased child should take the natural share of the parent. (4 Kent's Comm. 419; *In re Brown*, 93 N. Y. 295; *Scott* v. *Gurnsey*, 48 id. 106; *Prowitt* v. *Rodman*, 37 id. 42; *Parkman* v. *Bowdoin*, 1 Sumn. 368; *In re Paton*, 111 N. Y. 480, 486; *Lytle* v. *Beveridge*, 58 id. 593; *Chrystie* v. *Phyfe*, 19 id. 344; *Terpening* v. *Skinner*, 30 Barb. 373, 377; 29 N. Y. 525; *Parks* v. *Parks*, 9 Paige Ch. 107, 117; *Low* v. *Harmony*, 72 N. Y. 409.)

*Jos. A. Burr, Jr.*, for respondent. The Surrogate's Court had jurisdiction to pass upon questions here involved. (Code Civ. Pro. § 2743; *In re Verplanck*, 91 N. Y. 450; *Stimson* v. *Vrooman*, 99 id. 74.) In the clause of the will in question the words "surviving children" do not include grandchildren. (*Mowatt* v. *Carow*, 7 Paige, 328; *Palmer* v. *Horn*, 84 N. Y.

516; *Shannon* v. *Pickell*, 55 Hun, 127; *Patchen* v. *Patchen*, 121 N. Y. 432; *Palmer* v. *Dunham*, 125 id. 68; *In re Robinson*, 57 Hun, 395; *Mullarkey* v. *Sullivan*, 136 N. Y. 227; 2 Redf. on Wills [4th ed.], 11, § 2; *Stevenson* v. *Lesley*, 70 N. Y. 512; *Teed* v. *Morton*, 60 id. 506; *Bisson* v. *W. S. R. R. Co.*, 66 Hun, 704; *Soper* v. *Brown*, 136 N. Y. 249; *Sibley* v. *Perry*, 7 Ves. 522.) While the courts favor a construction of a will which will permit the children of a deceased testator to take rather than one which will exclude them, this principle has no application to a case when the language of the will is plain, and the intention of the testator is so clearly expressed as to leave no room for construction. (*Mullarkey* v. *Sullivan*, 136 N. Y. 227.) The law favors a construction which prevents a partial intestacy. (*Schult* v. *Moll*, 132 N. Y. 127; 2 Redf. on Wills [3d ed.], 120, § 10; *Crook* v. *De Vandes*, 9 Ves. 197; *Vernon* v. *Vernon*, 53 N. Y. 361; *Lyman* v. *Lyman*, 22 Hun, 263; *Thomas* v. *Snyder*, 43 id. 14; *Provost* v. *Calyer*, 62 N. Y. 545; *Byrnes* v. *Baer*, 86 id. 210–218.) Neither can it be claimed because he used the words " pay, divide and distribute among my surviving children equally," that the whole of Mrs. Curtis' share cannot pass to one child. (*Phillips* v. *Davis*, 92 N. Y. 199; *Roe* v. *Vingut*, 21 Abb. [N. C.] 404; 77 N. Y. 204.)

GRAY, J.   I quite agree with the General Term justices that the word " children " is used in this will in its primary signification. It is very clear that the testator thus refers to his immediate descendants and not to grandchildren. When he has remote descendants in view, he refers to them through the use of the word " issue." It is undoubtedly true that the term " children " may include " grandchildren; " but to give to it that very comprehensive meaning, we should be able to find such an intention on the testator's part from other expressions or clauses in the will. I am not aware of any case, in which the term " children " has been given a broader signification than it naturally imports; except there was something in the will which called for and justified it. In this will,

wherever a reference is made to other descendants than the testator's immediate offspring, they are spoken of as the "issue," or the "lawful issue," of his children and in one notable instance, in the seventh clause, the testator makes a certain disposition of his estate, "in case of the death of my wife and all my children and their descendants before me." That emphasizes his understanding of the term "children" as excluding such remote descendants as grandchildren. Therefore, in directing his trustees, "if either of his said children shall die and leave no issue surviving them * * * to pay * * * the capital of the share held for the use of the one so dying, to and among my surviving children equally," the testator meant his immediate descendants, and the application of that language to the case of Mrs. Curtis' death, childless, is to hold that, certainly, the trust fund set apart for her at testator's death belonged to Gilbert, testator's son. Mrs. Beard had predeceased Mrs. Curtis and her children were certainly not accorded a participation in that particular trust fund. Thus far, then, there is no difficulty in agreeing with the opinion of the General Term, as to what should be done with so much of the estate. But I do find great difficulty in reaching a conclusion that, as to the trust fund created and held for testator's widow, during her life, when, by her death, it was ready for distribution, the grandchildren were confined to a one-third share. Restricted as we are to the reading of this instrument, in our search for the intentions which underlay its execution, I am strongly inclined to judge that an intention is manifest, from certain differences in the testamentary directions, if not from anything very positive in the expressions, of making the final division of the estate upon a more equitable basis, as to the members who should then compose the family of testator's descendants. If there is that difference apparent in the disposition of the trust fund, before and after the death of the widow, and the balance, if it does not incline in the grandchildren's favor, at least, is equal with respect to their interests, I think the courts should uphold their right to share in the fund in

controversy. Language should not be strained, nor words given an unusual meaning, in order to work out a result favorable to the issue of a deceased child; but where it is possible to favor them, consistently with a fair reading of the will and with an equitable view of the disposition of the estate, it should be done, upon principles of justice, as upon authority. (*Scott* v. *Guernsey*, 48 N. Y. 106; *Matter of Brown*, 93 id. 295.) Now in this will it is to be observed that, after directing what disposition shall be made of the share of his child, who dies with, or without, issue, the testator proceeds to direct that: "If \* \* \* at the decease of my wife either of my children shall have died leaving issue \* \* \* surviving my wife \* \* \* my executors shall pay \* \* \* to and among such issue, equally, the share which would have been set apart for the use of the parent, if he or she had survived \* \* \* my wife, such payments \* \* \* to be made \* \* \* when they attain the age of twenty-one years." If, in this case, Mrs. Beard had lived to survive testator's widow, what share would have been set apart for her? It has been, and it is, said that it would be only a one-third of the trust fund held for the widow; by force of that previous direction, at her death to divide it into three parts and to set apart one for the use of each of his three children. The argument in aid of this answer is, unquestionably, very forcible. But while a literal reading upholds it, there is, in the rest of the will, the indication of an intention that the clause shall not be limited, in its operation, to a literal reading. The testator looked forward to a survival by his three children of their mother's death and, accordingly, made the provision given in the clause just mentioned. He anticipates the possibility of a child's death, intermediate his own and his widow's death, and without issue; and he directs, in such event, a payment of the capital of the share held for that child to his surviving children. Now the trustees, in a sense, were holding, not only the particular share, or fund, taken out of the residue for the child, at the time of testator's death, but also a one-third share of the trust fund created for the widow, to

be enjoyed upon her death. In the event of the child's death, his or her interest in that trust fund would shift, and, under the earlier direction in the paragraph, would vest in his or her issue ; or, if having left none, in the surviving children of the testator. But a qualification of that direction is introduced in the later paragraph, which respects the rights of the issue of a deceased child, if surviving testator's widow; to the effect that they shall receive what their parent would then have been entitled to, if living. So that while, by reason of Mrs. Curtis' death, childless, after Mrs. Beard and before her mother, that part of the trust fund presently held for her, according to an explicit direction, went wholly to Gilbert ; yet, upon the widow's death, as Mrs. Curtis' interest in that trust fund would have been distributable, if Mrs. Beard were living, equally between her and Gilbert, her (Mrs. Beard's) previous decease, leaving issue, brought into operation that later direction to pay to such issue, if they survived the widow, " the share which would have been set apart for the use of the parent " and, thus, gave to them one-half of the trust fund to be distributed. That the testator intended that the issue of a child should never receive more than one-third of the residuary estate is very strongly negatived from the following provision, in which he says : " If either of my children shall die before me leaving no issue surviving me, then I direct my executors to divide the residue of my estate into two equal shares and designate one for the use of each of my surviving children," etc. If that was his intention, in the event of a death of a child before him, shall we, and must we, not say that the same intention dominated future occurrences, such as we have here ? I think that he did intend, upon his wife's death, if a child had previously died, leaving issue who survived, not merely that they would take the one-third intended originally for their parent, but that they would take just what their parent would have been entitled to, if surviving and the previous event of a brother's or sister's death, childless, had happened. I recognize the obstacles in the way of this construction ; which are interposed

by a sort of preciseness in expressions, and, particularly, by the testator's directing, upon his wife's death, a division into, and a setting apart of, three shares and by his failing, specifically or in exact terms, to provide for the case, which has happened, of the death of two children before his wife's; the one with and the other without issue. But I am influenced to hold that such a construction is right, because of the absence of any evidence of a reason for wholly discriminating against issue of his children and because the only explicit discrimination against them, which we seem compelled to follow, is with respect to the three particular trust funds which are set apart for testator's children at his death. With respect to them, the survivors of that class take, upon a death without issue.

The General Term justices, to sustain their views, say, as to those provisions of this fourth clause by which the trustees are directed, upon the death of a child without issue, to pay the " capital of the share " held for the deceased, to the testator's surviving children, that they comprehend, or refer to the one-third part of the entire residuary estate and not merely that particular fund created and set apart upon testator's death for the child. In this view, upon Mrs. Curtis' death, her brother Gilbert thereby became alone entitled to the fund presently held for her, and eventually, upon the death of testator's widow, to the one-third appointed for Mrs. Curtis in her fund. Upon the same theory, Mrs. Beard's children must, also, upon her death, have become thereby entitled, at once, to their mother's trust fund and, eventually, to the one-third appointed for her in the widow's trust fund. The paragraph of the will, to which the General Term opinion refers, applies to both cases. If the child die leaving issue, the trustees are directed to pay to the issue the " capital of the share " held for the deceased; and if dying without issue they are to pay the " capital of the share " held, etc., to the surviving children. But such a construction makes the later direction in the clause to the trustees, as to their duty upon the death of testator's widow, quite unnecessary, if it is only meant thereby to give to the surviving issue of a deceased child the share originally

appointed to the parent in the trust fund held for the widow's life.   The counsel for the respondents attempts to supply a meaning to this later paragraph, which the General Term seems to have ignored, and he says that its purpose was to limit the time of the payment to a grandchild of the portion of its parent's share to its coming of full age.   I cannot agree with either reasoning.   Under the one the later paragraph seems to be regarded as useless ; while under the other it seems emasculated of that force which its explicitness and the form of its expression entitle it to.   In the application which I advise our giving to it, it has an office to perform in governing the disposition of testator's estate, as reasonable as it is equitable.   I think, too, it has much importance in preventing a possible intestacy in the event of the death of the testator's widow and the liberation of her trust fund.

Our conclusion is that the fund set apart at testator's death for Mrs. Curtis should be paid over to Gilbert Potter ; and that the fund held in trust for the testator's widow should be divided ; one-half to be paid to Gilbert Potter and the other half to be paid, in equal portions, to the daughters of Mrs. Beard, to wit ; Josephine Canfield and Anna Beard, these appellants.

The judgment of the General Term should be modified, so as to direct the Surrogate's Court to proceed to make a distribution of this estate in accordance with this opinion and as so modified it is affirmed, with costs to the parties appellants and respondents to be paid out of the estate.

All concur, except BARTLETT, J., not sitting.

Judgment accordingly.