In the Matter of the Judicial Settlement of the Accounts of FRANK J. MAGUIRE, as Executor and Trustee under the Last Will and Testament of JOSEPHINE V. BLODGETT, Deceased.

FRANK J. MAGUIRE, as Executor and Trustee, etc., of JOSEPHINE V. BLODGETT, Deceased, Appellant; NATHAN E. BLODGETT, IDA HOFFMAN and KATHERINE BARNES, Contestants, Respondents, Appellants; JAMES P. SCHAUS, Special Guardian for O'CONNELL FERRIS, Contestant, Respondent.

Fourth Department, March 10, 1937.

*Edward N. Mills* and *Carlos C. Alden*, for Frank J. Maguire, accounting executor and trustee, appellant.

*Benjamin E. Shove*, for Blodgett, Hoffman and Barnes, contestants, respondents, appellants.

*James P. Schaus*, special guardian for O'Connell Ferris, contestant, respondent.

SEARS, P. J.    Josephine V. Blodgett, a resident of Buffalo, died October 25, 1924, leaving a will dated July 20, 1923, and a codicil dated September 20, 1923, of which the appellant Frank J. Maguire was named executor and trustee.    He duly qualified and has acted in such capacities.    The validity of his acts as trustee are under attack in this proceeding.

The testatrix was survived by a daughter Gertrude H. Blodgett, who, at the time of her mother's death was forty-seven years of age and unmarried, and a son Harry C. Blodgett, who was then married but had no children.    The precise age of Harry C. Blodgett does not appear in the record.

With the exception of relatively small pecuniary and specific bequests and the devise of the homestead (which for the purposes of this appeal may be disregarded) the will indicates a studied endeavor on the part of the testatrix to make equal provision for her two children.    After bequeathing $50,000 to each, she directed that any gifts which she might make before her death to either of

her children should be considered as advances made in anticipation of her testamentary provision for them and that such gifts should be adjusted by her executor through payment from her estate of whatever sums might be required to equalize any difference in the totals of such advances.

The will directed that the residuary estate be divided " into two parts, equal as nearly may be," and impressed each part with a trust. The income from one equal part which for convenience is here called " the Gertrude H. Blodgett trust " was to be paid to the daughter Gertrude for life. Upon the daughter's death the principal and its accumulated income was to be paid to the testatrix's son subject only to the prior payment therefrom of a small bequest to a local church. It was further provided in the will that if testatrix's son should not survive her daughter the principal and accumulated income should be paid to his surviving issue. It was further provided in the will that if the son should then be dead and no issue surviving, the principal and income should pass as follows: $10,000 to testatrix's sister, Mary Ann Van Cleef, and the residue " in equal shares to the brothers and sisters of [testatrix's] deceased husband, Milton J. Blodgett; the children of such as may be dead to take the shares which their parents would have taken if alive, *per stirpes* and not *per capita.*"

For convenience the accounting executor and trustee Frank J. Maguire is called in this opinion " the appellant." The contestants of the trustee's accounting are a surviving brother and a surviving sister of testatrix's husband and the surviving daughter of a deceased sister and the surviving grandson (the sole surviving issue) of another deceased sister of testatrix's husband. These last mentioned four persons are for convenience designated in this opinion " the ultimate remaindermen." This disregards, for the moment, the claim of the first three named ultimate remaindermen that the grandson of a deceased sister is not a remainderman within the description contained in the will. The claim is referred to later.

The other equal part of testatrix's residuary estate, called here for convenience " the Harry C. Blodgett trust," was correspondingly impressed with a trust and the income directed to be paid to testatrix's son Harry C. Blodgett during his life and upon his death $10,000 was to be paid from the principal and its accumulated income to his wife, Beatrice, and the remainder to his issue, and in default of issue, to the testatrix's daughter, if living, but if she was not then living, to the ultimate remaindermen named as residuary legatees on the disposition of the Gertrude H. Blodgett trust.

As to each of the trusts it was also provided in the will that upon the son or daughter of the testatrix attaining the age of sixty years, his or her respective trust should terminate and its principal with accumulated income should be paid over to the beneficiary for life without restriction.

The provisions thus far referred to outline the general disposition of the estate. Other clauses important on certain questions before us on this appeal are referred to later.

The testatrix's son, Harry C. Blodgett, survived his mother less than seven months. He died May 7, 1925, without having reached the age of sixty years, leaving a widow, Beatrice D. Blodgett, but no issue. Under these circumstances the corpus of the Harry C. Blodgett trust became payable on his death to his sister Gertrude H. Blodgett who survived him, subject only to the payment therefrom of the bequest to his widow of $10,000.

The testatrix's daughter, Gertrude H. Blodgett, married Ernest Zulauf in 1929 and died on the 12th day of January, 1934, at the age of fifty-seven years, leaving her husband, but no children surviving her.

The account of the appellant as executor of the will of Josephine V. Blodgett was settled by decree of the Surrogate's Court dated November 27, 1925. Prior to that day and apparently on the 1st day of October, 1925, the appellant treated the residuary estate as turned over to himself as testamentary trustee. The residuary estate at that time consisted of cash and securities. Thereafter the appellant as trustee filed intermediate accounts annually upon which decrees of settlement were granted.

When the appellant filed his petition and final account as trustee in April, 1934, in the proceeding now before us and prayed for final settlement, it was disclosed that upon no one of his prior accountings either as executor or trustee had citations been issued to the ultimate remaindermen nor had any of them appeared or waived notice of the proceedings. Thereupon the surrogate properly ruled that the ultimate remaindermen were not bound by the prior decrees of settlement and it was finally stipulated by the appellant, executor and trustee and the ultimate remaindermen that not only the appellant's final account as executor in 1925 but all of the subsequent accounts as trustee with the decrees applicable to each were open and before the court for consideration. The ultimate remaindermen then filed objections to the accounts bringing into question the legality of the acts of the appellant in administering the estate as executor and as trustee.

A fundamental objection which has resulted in very large surcharges against the appellant relates to the method pursued by

him in making division of the residuary estate into the equal Gertrude H. Blodgett and Harry C. Blodgett trusts. When the appellant filed his final account as executor on November 27, 1925, the account showed that he had already begun to treat the residuary estate as under his control as trustee and the first intermediate accounting of the appellant as trustee charged himself as trustee with the receipt from himself as executor of an inventory of cash and securities aggregating $407,039.25. The first account shows that the appellant as trustee had already sold certain stocks and bonds included in the inventory so as to put himself in funds to be able to pay the corpus of the Harry C. Blodgett trust in cash, to the remaindermen, Beatrice D. Blodgett and Gertrude H. Blodgett. Thus Beatrice D. Blodgett received $10,000 and Gertrude H. Blodgett $193,198.24. There were at the same time retained by the trustee in the corpus of the Gertrude H. Blodgett trust various shares of stock which had apparently been owned by the testatrix in her lifetime, including twenty-three shares of the stock of the Buffalo Glass Company as the trustee's account shows, valued at $153,015.90, and a considerable number of shares of both common and preferred stock of the American Window Glass Machine Company. Thus the trustee in making division of the property between the two equal trusts retained the estate's stock investments in the Gertrude H. Blodgett trust and paid the corpus of the Harry C. Blodgett trust in cash to the remainderman, Gertrude H. Blodgett. Before making this division the trustee took the precaution of having the securities revalued. The ultimate remaindermen now claim that the trustee in making the division of the property between the two trusts should have divided the stocks equally between them as near as possible and should have divided the cash equally between them, adjusting by cash payments unavoidable discrepancies in the stock divisions, and that the executor must now be surcharged with all the losses of corpus which have occurred from retaining in the Gertrude D. Blodgett trust one-half of the stocks which were retained by the trustee as a part of the corpus of that trust.

To understand the contentions fully certain provisions of the will must be considered. The will provides that the trustee was authorized to retain investments held by the testatrix in her lifetime. The language is as follows: " In the investment and re-investment of trust funds, my said trustee shall be restricted to investments of the character prescribed by the laws of the State of New York for investments of executors and trustees. He shall, nevertheless, have power and authority to hold in the form in which [he] receives it, any property which may be a part of my estate at the time of my death, whether or not such property shall be of the

character prescribed by law for trust investments." As bearing upon the problem a further provision of the will must also be taken into consideration which is as follows: " Whenever by any of the terms hereof my said trustee is required to divide property into parts or shares or to make payment of any sum to any person, he shall have power and authority to make such division or payment in money, or in kind, or partly in money and partly in kind; and for the purpose of allotment of property to such division or payment, the judgment of my said trustee as to the propriety of such allotment or the value of any property so allotted, shall be binding and conclusive upon all concerned."

The appellant contends that by the last quoted paragraph of the will he was fully authorized to make the division which he made, allotting to the Harry C. Blodgett trust cash for payment to Gertrude H. Blodgett, the remainderman, and by allotting to the Gertrude H. Blodgett trust both securities and cash, including the securities mentioned above which were not readily salable.

There is no finding of bad faith or fraud. We must decide the question upon the legal power of the trustee under the will. The testatrix clearly vested in her trustee an extremely broad discretion to make divisions and allotments of her property. This she had a right to do, and if the trustee acted within the terms of that broad authority his act should be sustained, in the absence of fraud or bad faith. It is not enough that the stocks allotted to the trust have shrunk in value. It is not enough that one trust may ultimately pay out much less to the ultimate remaindermen than the other trust did to its remainderman. No great principles of equity, the life of every trust, were infringed. (*Carrier* v. *Carrier*, 226 N. Y. 114.) The act of the trustee in making these divisions and payments was within the terms of his authority found within the four corners of the will itself.

Inasmuch as we disapprove of the surcharges provided in the decree based upon the division, there must be a readjustment of the account and a new trial will be necessary. It will be open to the ultimate remaindermen on the retrial to challenge the acts of the trustee in the management of the corpus of the Gertrude H. Blodgett trust. In view of the fact that on March 31, 1924, the Buffalo Glass Company was dissolved by proclamation of the Governor, there may be a question, as to which we express no opinion, as to the retention in the trust of the so-called shares of the Buffalo Glass Company and of the conduct of the trustee in respect to the property interests represented by that item.

The surcharge of $7,126.76 as representing premiums on the trustee's bond and rental of trustee's safe deposit box is proper.

The will itself provides that the necessary and proper expenses in connection with the administration of the trusts shall be paid from income. These items fall within that provision. (*Matter of Parsons*, 238 App. Div. 883.)

The appellant challenges the construction put upon the provision for invasion of principal in the will and the codicil. The provision of the will is as follows: " If in any year the income payable under the terms of each of subdivisions (a) and (b) of paragraph ' Thirteenth ' of this my last will and testament [the provision for the payment of income to the life beneficiaries in the Gertrude H. Blodgett and Harry C. Blodgett trusts] shall be less than Fifteen Thousand Dollars ($15,000.00), then and in that event my said trustee shall have power and authority in his sole discretion to pay out from the corpus or principal such sum or sums as will, when added to such income, make a total equal to the aforesaid amount but not to exceed in any case Five Thousand Dollars ($5,000.00) to each of my children in any one year; provided, however, that such payments of corpus or principal shall not be made when and to the extent that to make them would reduce the corpus then held in trust under each of said subdivision (a) and (b) of said paragraph ' Thirteenth ' below a total value of One Hundred Twenty-five Thousand Dollars ($125,000.00)."

The codicil executed two months later contained the following language:

" *First.* Whereas, by the provisions of paragraph ' Thirteenth ' of my said last will and testament, I directed my trustee to pay to each of my children, Gertrude H. Blodgett and Harry C. Blodgett, the income from the certain trusts therein created; and whereas, by the provisions of paragraph ' Fifteenth ' of my said last will and testament I empowered my said trustee to make payments to my said children from the corpus of the said trusts not to exceed Five Thousand Dollars ($5,000.00) to each child in any one year: Now, I do hereby authorize and empower my said trustee to pay out from the corpus of the said trust a further sum of Five Thousand Dollars ($5,000.00) each year to each of my said children, such payments to be subject to the limitation contained in the said paragraph ' Fifteenth ' of my said last will and testament that such payments shall not reduce the corpus of each trust below a total value of One Hundred Twenty Five Thousand Dollars ($125,000.00)."

The surrogate has properly ruled that the codicil permitted an invasion of the principal in each trust to the extent of $10,000 instead of $5,000 for the purpose specified in the quoted provisions of the will itself, that is, to make up the yearly payment to a total

amount to the life beneficiaries respectively of $15,000, and not $20,000 as claimed by the appellant and shown on his accounting.

The amount of surcharge resulting from this construction, $44,028.06, depends not only on the construction to be given to the words of the codicil above quoted but also on a calculation of the amount of principal invaded by the actual payments made to the life beneficiaries through the years. As our decision as to the surcharges first discussed requires a restatement of the trustee's account, the amount of the surcharge for invasion of principal will also have to be redetermined.

Another surcharge amounting to $3,019.78 has been imposed upon the trustee upon the theory, it seems, that income derived from the residuary estate from the date of the testatrix's death to the time that appellant commenced to act as trustee does not belong to the beneficiaries of the trusts but is to be treated as an accretion to the principal. The trusts were created for the benefit in the first instance of the children of the testatrix. Under the circumstances shown upon this record the life beneficiaries were entitled to the income from the day of the death of the testatrix even though the trusts were not physically set up until later. (*Matter of Slocum*, 169 N. Y. 153, and see *Lawrence* v. *Littlefield*, 215 id. 561.) The re-examination of the executor's and trustee's accounts will require a reconsideration of this item.

The question remains for consideration as to whether O'Connell Ferris, a grandson of a deceased sister of the testatrix's husband, is an ultimate beneficiary under the terms of the will. O'Connell Ferris is the sole surviving issue of the deceased sister. The clause naming the ultimate beneficiaries in the will is as follows: " All the rest and residue of the said part and the said accumulated income, in equal shares to the brothers and sisters of my deceased husband, Milton J. Blodgett, the children of such as may be dead to take the shares which their parents would have taken if alive, *per stirpes* and not *per capita*." The question is as to the meaning of the word " children " in this clause. Does it in this case include a grandchild? We recognize the presumptive rule that the term children does not generally include within its content grandchildren. In *Prowitt* v. *Rodman* (37 N. Y. 41) the court in its opinion quoted with approval the words of Chancellor KENT (4 Kent's Comm. 419, note): " Children as well as issue may stand in a collective sense for grandchildren where the justice or reason of. the case requires it." In *Matter of Truslow* (140 N. Y. 599) the court said: " Language should not be strained, nor words given an unusual meaning, in order to work out a result favorable to the issue of a deceased child; but where it is possible to favor them, consistently

with a fair reading of the will and with an equitable view of the disposition of the estate, it should be done, upon principles of justice, as upon authority. (*Scott* v. *Guernsey,* 48 N. Y. 106; *Matter of Brown,* 93 id. 295.)" (*Matter of Schaufele,* 252 N. Y. 65; *Beebe* v. *Estabrook,* 79 id. 246.) The will in this case disposed of an estate which the testatrix derived in large extent from her husband. Her first thought was for the children of herself and her husband and her son's children, if any. After they were provided for, then her natural thought was to leave the bulk of the estate to those closest in blood to her husband. They were her husband's brothers and sisters and representatives by descent. The gift was confined to the family of the testatrix's husband. No possible reason appears on the record why under such circumstances the testatrix would want to restrict her donations to her husband's brothers and sisters and the immediate children of one deceased, excluding a representation by more remote descendants. We reach the conclusion as did the surrogate that the purpose of the ultimate bequest was to benefit the several branches of the family (brothers and sisters) of her husband *per stirpes* and without regard to any preferences of testatrix's among them and that the sole issue of a deceased sister of the testatrix's husband, though a grandchild comes within the testamentary description of the ulti- mate remaindermen.

The decree, so far as appealed from (there being no appeal from the fourth and fifth ordering paragraphs), should be reversed on the law except the parts thereof contained in first, second, third and eighth ordering paragraphs and the third ordering paragraph after the summary statement, and a new trial granted as to the matters included in the parts of the decree reversed, without costs, and the decree, so far as appealed from and not reversed, should be affirmed, without costs.

All concur, except LEWIS, J., who dissents in part in an opinion. Present — SEARS, P. J., THOMPSON, CROSBY and LEWIS, JJ.

LEWIS, J. (dissenting in part). I am not in accord with the decision about to be made in so far as it disapproves the items surcharged against the trustee by reason of his failure in 1925 to divide equitably between Gertrude H. Blodgett and the Gertrude H. Blodgett trust the cash and securities comprising the corpus of the Harry C. Blodgett trust.

Upon the death of the testatrix's son, Harry C. Blodgett, the trust created in his favor terminated. (Real Prop. Law, § 109, made applicable to personal property by Pers. Prop. Law, § 11:

*Matter of Thomas,* 228 App. Div. 203, 207; revd. on other grounds, 254 N. Y. 292.) Thereafter the only duty remaining to be performed by the appellant as trustee of that particular trust was to pay over its principal to those entitled thereto under the provisions of the will. (*Matter of Miller,* 257 N. Y. 349, 355.) At that time the estate was in the process of administration; its assets were in the appellant's hands as executor, subject to the claims of creditors and expenses of administration, after which the residue was to be divided " into two parts, equal as nearly may be " for the purpose of setting up the two trusts. When the residuary estate was turned over to the appellant as testamentary trustee several months later, he took title to half thereof as trustee of the Gertrude H. Blodgett trust. As to the remaining half — which would have become the principal of the Harry C. Blodgett trust if the son had survived — the trustee's only duty was to pay to the widow, Beatrice D. Blodgett, her bequest of $10,000 and deliver the balance to Gertrude H. Blodgett as remainderman. (*Matter of Miller, supra,* p. 355.)

I differ with the view of a majority of the court as to the propriety of the manner in which the division was made. Instead of distributing in kind the stocks, bonds and cash which comprised the residuary estate — one-half of each to Gertrude H. Blodgett as remainderman and one-half to the Gertrude H. Blodgett trust — the trustee chose to pay Gertrude H. Blodgett in full in cash. To accomplish that end he sold substantially all of the readily marketable securities included within the total undivided residuary assets and from the proceeds paid to Gertrude H. Blodgett $193,198.24. Having thus favored Gertrude H. Blodgett by cashing those assets of the estate which were quickly marketable, there remained in his hands as trustee only a comparatively small amount of cash and certain securities which consisted largely of local stocks having a restricted market. It was from these less favored assets that the trustee set up the Gertrude H. Blodgett trust in which lodged the contingent interests of the ultimate remaindermen and in which they were to share ten years later.

These facts and others disclosed by the record indicate a sustained effort by the trustee to favor the interests of Gertrude H. Blodgett but with less regard for the contingent interests of the ultimate remaindermen whose rights were also within his care. Neither courts nor text writers approve such conduct by a trustee. Their emphasis is upon conduct which in the end brings about equality in the distribution of the corpus of a trust among its beneficiaries; they condemn an exercise of discretion which results in inequality. (*Matter of Harden,* 177 App. Div. 831, 835, 836; affd., 221 N. Y.

643.  See, also, 2 Perry on Trusts and Trustees [7th ed.], § 511-b; 4 Schouler on Wills, Executors and Administrators [6th ed.], § 3137.)

A majority of the court find the trustee's acts justified by the fact that in the will which created the trust the testatrix provided: " (d) Whenever by any of the terms hereof my said trustee is required to divide property into parts or shares or to make payment of any sum to any person, he shall have power and authority to make such division or payment in money, or in kind, or partly in money and partly in kind; and for the purpose of allotment of property to such division or payment, the judgment of my said trustee as to the propriety of such allotment or the value of any property so allotted, shall be binding and conclusive upon all concerned."

Concededly the authority thus given to the trustee is broad, but " however broad [it] did not relieve him [the trustee] from obedience to the great principles of equity which are the life of every trust." (*Carrier* v. *Carrier*, 226 N. Y. 114, 125, 126.) He was trustee, not alone for Gertrude H. Blodgett, but also for the ultimate remaindermen whose interests in the principal of her trust might become substantial if she died before attaining the age of sixty — which eventually occurred.

Moreover, the discretionary power granted by the clause upon which the appellant relies must be construed with another clause of the will which was employed by the testatrix in creating the two trusts. After providing that her residuary estate should be held in trust " for and upon the following uses and purposes and subject to the terms, conditions and powers hereinafter set forth," she directed her trustee, " *First.* To divide the corpus or principal sum of the said residue of my property into two parts, equal as nearly may be."   I find in this direction a peculiar phrasing which makes emphatic the desire of the testatrix for equality in the distribution of assets to be made between the two trusts.   Not only was the residue to be divided into " two parts " but those parts were to be " *equal as nearly may be* "— a phrase which I believe should be considered as we fix the standard by which the reasonableness of the trustee's conduct is to be tested.

The view taken by a majority of the court seems to disregard the first direction by the testatrix as to equal distribution of the residue.   The decision is to rest upon the discretionary power given elsewhere in the will to the trustee leaving in my mind the *quære:* May we thus disregard the reasonable implications to be drawn from this first direction?   Should not our decision reflect a consideration of the entire will; should it not be responsive to the desire — clearly expressed by the testatrix — for equality in dis-

tribution of the residuary estate?  Or should we give heed to that paragraph alone which endows the trustee with a broad discretion?

Viewing the manner of distribution chosen by the trustee in the light of the definite direction by the testatrix for an equal division of residuary assets between the two trusts, I believe that principles of equity and common fairness dictate that there should have been at least some reasonable proportion between cash and securities — between the best and the worst securities in the trustee's portfolio.

The broad discretion vested in the trustee did not give him an absolute and uncontrolled power.  When our courts had occasion to consider a trust instrument which gave to a trustee discretion " absolute and uncontrolled " it was said: " That does not mean, however, that it might be recklessly or willfully abused." (*Carrier* v. *Carrier, supra,* p. 125; Cf. *Ireland* v. *Ireland,* 84 N. Y. 321, 326 *et seq.;* 2 Schouler on Wills, Executors and Administrators [6th ed.], § 1379.)

Inasmuch as the same instrument which made the appellant trustee of the rights of Gertrude H. Blodgett also extended that trusteeship to the rights of the ultimate remaindermen, and in view of the provisions of the will to which reference has been made, it impresses me as manifestly unjust and inequitable that the trustee should have so distributed the residuary estate that the continuing trust was required to bear the risk and subsequent loss which attended the retention of unmarketable securities while Gertrude H. Blodgett, as remainderman of the terminated trust, was paid with cash in full.

Decree so far as appealed from (there being no appeal from the fourth and fifth ordering paragraphs), reversed on the law, except the parts thereof contained in the first, second, third and eighth ordering paragraphs and the third ordering paragraph after the summary statement, and a new trial granted as to the matters included in the parts of the decree reversed, without costs, and the decree so far as appealed from otherwise affirmed, without costs.