28 So.2d 720

### COOPER v. BIRMINGHAM TRUST & SAVINGS CO.

6 Div. 446.

Supreme Court of Alabama.
Jan. 16, 1947.

Cabaniss & Johnston and K. E. Cooper, all of Birmingham, for appellant.

Smiley & Smiley, of Birmingham, for appellee.

FOSTER, Justice.

The question on this appeal relates to the proper interpretation of the will of Sallie E. Hunley, deceased, which created a trust with the Birmingham Trust and Savings Company, as trustee. She died July 7, 1922. The trustee filed this bill to have certain features of the will construed so that it may be sure of its duty in the administration of the trust. At present the purpose is to make it certain as to the proper distribution of the income, since the event has not occurred which requires a termination of the trust and distribution of the corpus. The property in question was devised to the trustee in trust for the purposes, and with the power stipulated. The net income is first taken care of: then upon the termination of the trust, the corpus is directed to be distributed. We are not now directly concerned with a distribution of the corpus, but its provisions are appropriate for reference in interpreting the feature disposing of the income. In fact the entire will and all its features are proper for consideration.

The cause was submitted on answer of the adult residents, admitting the facts alleged in the bill, and on decree pro confesso against the adult non-residents, and the answer of the guardian ad litem for the minors denying the allegations, and on testimony, taken by deposition, as to which there is no conflict.

The blood kin of testatrix and their status at the time of the filing of the bill are as follows:

She had two children (1) Kathleen H. Cunningham, who died January 19, 1945, and who had one child Susie Cunningham Wilson Kendrick, who died April 12, 1940, before her mother, and left two children Kathryn H. Kendrick and Esther Kendrick, residents of Philadelphia, Pennsylvania.

(2) Richard Forney Hunley, who died July 5, 1943, and who left no descendants, but a widow named Mabel C. Hunley, who is still living.

Testatrix also had two sisters: (1) Jennie Porter Ellis who is still living. (2) Mary C. Stiles, who died March 25, 1942: she had four children, (a) James Edmonds Stiles, still living; (b) Mitchell Porter Stiles died March 23, 1940, and left surviving him one child, Porter H. Stiles, and no other descendants; (c) Will Burt Stiles died February 26, 1927, leaving no descendants; (d) Mary Stiles Locke died September 25, 1934, leaving two minor children, Charles O. Locke, Jr., and Mae Porter Locke.

The trust was to terminate at the death of both of her children and of Mabel C. Hunley, the widow of her son. Both children are dead now, but Mabel C. Hunley is not, so that the trust is continuing. While it continues, the trustee is seeking instructions from the court as to the proper distribution of the income dependent upon a construction of the will as applied to the present status of the beneficiaries according to its terms.

Item 3(b) provides for an equal distribution of the income between her daughter and son named above; and 3(c) that if the son should die before the termination of the trust, leaving no children surviving, then in that event her daughter Kathleen Hunley Cunningham shall be entitled to all the net income during her life, except out of what had been the son's share his widow, Mabel C. Hunley, is to receive $300 annually as long as she lives.

As we have shown, her son Richard Forney Hunley died in 1943, and left no children nor descendants. Therefore Kathleen H. Cunningham, the daughter of testatrix, became entitled to receive all the income (except $300 a year for Mabel C. Hunley) during her life. She died January 19, 1945, and after her death there is uncertainty thought to exist as to the proper distribution of the income. The daughter Kathleen H. Cunningham had a daughter by the name of Susie Cunningham Wilson (later she married Kendrick).

There was shown to have been some adverse feeling between the testatrix and this daughter of Kathleen H. Cunningham. Still with reference to income, Item 3(c) further provided that if her daughter should die before the termination of the trust, "leaving no child or children hereafter born to her surviving her," all the net income which she would have been entitled shall go to her son during his life; but if she should leave surviving her a child or children *hereafter born to her* such child or children shall receive her share, but that Susie C. Wilson is to receive no part of the income. The daughter Kathleen had no other child born to her thereafter, and Susie C. Wilson died before Kathleen leaving two children.

Said item also provided that if the daughter should die leaving no child surviving her except Susie C. Wilson, which she did, and the son should die leaving no child or children surviving him, before the death of Mabel C. Hunley, which he did, all the net income of the trust up to the time of the death of Mabel C. Hunley, except $300 a year for Mabel C. Hunley, shall be paid to her two sisters, Mary C. Stiles and Jennie Porter Ellis, share and share alike, "and if either of them be dead, the child or children of the deceased shall take the share which the parent would have taken to be divided as hereinafter set forth."

The matter "hereinafter set forth" apparently refers to some clauses in item 3(d) with reference to a disposition of the corpus on the termination of the trust, also made applicable to income. After providing that on the contingencies named, the corpus should be divided between her two sisters named above, it is provided that in the event of the death of her sister Mary C. Stiles at the time of the division, her share shall go to her children share and share alike, except that her son James Edmonds Stiles shall receive twice as much as each of the other children, "and in like manner is a division to be made of the income to which my sister Mary C. Stiles would be entitled to if living under the provisions of (c) of this item."

Also it is provided that if her sister Jennie Porter Ellis is dead at the time of

division her share should go to her children (she had four all alive), share and share alike, except that two of them Mildred and Ann shall receive twice as much as the others, and in like manner the income prior to termination of the trust should be apportioned on that contingency.

In (d) it is also provided that on the termination of the trust Susie C. Wilson shall receive $50, which is all she is to receive out of the trust property. Susie C. Wilson was a grand-daughter of testatrix and a daughter of Kathleen H. Cunningham, a daughter of testatrix. In making provision to occur after the death of Kathleen, testatrix specifically referred to a child or children "hereafter born to her surviving her." That and other clauses expressly excluded Susie C. Wilson.

We think it undoubtedly also excluded the children of Susie C. Wilson. Testatrix only included the children of Kathleen thereafter born. These grandchildren were in no sense included in that description. And they are making no such contention in this case. And since Richard Forney Hunley, her only son, died before Kathleen, leaving no children or descendants, the beneficiaries on the death of Kathleen, January 19, 1945, were her two sisters, Jennie Porter Ellis and Mary C. Stiles, if living at that time. Jennie Porter Ellis was then and still is living. Mary C. Stiles was then dead, and left only one child living at the time of the death of Kathleen H. Cunningham, January 19, 1945. But she had a son Mitchell Porter Stiles, who died in March 1940, and left a son living, Porter H. Stiles; and also had a daughter Mary Stiles Locke who died in 1934, leaving two minor children.

The question therefore is whether the provision of the will that the distribution of the income on the death of Kathleen shall be to Jennie Porter Ellis and Mary C. Stiles, or if dead to the "child or children of the deceased," includes grandchildren, if one or more of the children is dead leaving a child.

The son of Mitchell Porter Stiles, towit, Porter H. Stiles, and the two children of Mary Stiles Locke, are in the class of grandchildren of Mary C. Stiles. As

used in the will, do the words "child or children surviving," mean the child or children of a deceased child?

■ The usual and ordinary meaning of *child* does not include grandchild. It does include a grandchild in two instances (1) when it is necessary to make the will operative, and (2) when it clearly appears that the testator intended to use the expression so as to include grandchildren. Benners v. First National. Bank, 247 Ala. 74, 22 So.2d 435; Spencer v. Title Guarantee Loan & Trust Co., 222 Ala. 485, 132· So. 730, (a different case and a different instrument) 222 Ala. 221, 132 So. 32; Wilson v. Rand, 215 Ala. 159, 110 So. 3.

It is not necessary in this case to include grandchildren to make the will presently operative as to the Stiles share. James Edmonds Stiles is a living child of Mary C. Stiles, and the only one still living. If his right to such income came into being by the circumstance that he was her only living child at the time of the death of Kathleen H. Cunningham, would it continue as a vested right in his estate after his death, if he should die before the termination of the trust? Who will succeed to it if he dies before the termination of the trust? It does not appear whether he has children. While that contingency has not arisen, it may do so, and its suggestion is pertinent in ascertaining the intention of the testatrix.

■ In arriving at the proper meaning of the will the terms used should be interpreted in the light of the contingencies which the testatrix could foresee. She could foresee that at the death of her daughter, Kathleen, Mary C. Stiles might have only one child living, and that there may be sons and daughters of other children then dead, or that all of her children may be dead leaving children. In fact, all may yet be dead at the termination of the trust. For at that time James Edmonds Stiles may be dead. If so, it is pertinent now to ask in order to interpret the meaning of the will, what did the testatrix wish as to the share of her sister Mary C. Stiles in that event? It was not to go to the other sister or her children under any contingency. The testatrix was disposing of her property, and we presume did not intend to leave this share undisposed of in any contingency. And likewise as to the income, suppose James Edmonds Stiles should die before the termination of the trust, what would become of the Mary C. Stiles share of the income? Did testatrix mean that the distributees or legatees of James Edmonds Stiles should receive it all? We do not think so. The will does not so indicate. Unless we say she intended for the children and grandchildren of Mary C. Stiles to receive the income and on termination of the trust the corpus which was intended for this sister, the whole corpus of Mrs. Stiles' share may not unlikely be distributed as a part of Mrs. Stiles' estate, and be subject to her will, if she had one. We think testatrix clearly intended otherwise.

We cannot close our eyes to the contingency which may exist at the termination of the trust that James Edmonds Stiles may be dead. We should find out the intention of testatrix in that event, as material to determine who she meant to have the income while James Edmonds Stiles is still living. She shows an intention to have both situations controlled alike.

■ Taking the view that the testatrix meant to include grandchildren of Mrs. Stiles, as well as children living at the time of the fixation of the interest of the parties, it would result that the income intended by the will of Mrs. Hunley, which is one-half of that which accrued after January 19, 1945, subject to the annuity of Mabel C. Hunley, should be divided between James Edmonds Stiles, Porter H. Stiles, and the children of Mary C. Locke, deceased, so that one-half of such share or one-fourth of the entire net income shall go to James Edmonds Stiles (he is to have twice as much as the other children of Mrs. Stiles), and one-fourth of such share or one-eighth of the entire net income shall go to Porter H. Stiles, and one-eighth of such net income shall go to Charles O. Locke, Jr., and Mae Porter Locke, jointly, or one-sixteenth to each of them, separately.

The decree of the trial court will be so modified and affirmed.

Modified and affirmed.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.