[Civ. No. 6625. Fourth Dist. Jan. 18, 1962.]

Estate of LAURA NORTON BROWN, Deceased. FIRST WESTERN BANK AND TRUST COMPANY, as Trustee, etc., Petitioner, v. BEVERLY BROWN, Individually and as Guardian ad Litem, etc., et al., Objectors and Appellants; DOUGLAS BROWN et al., Claimants and Respondents.

Launer, Chaffee, Hanna, Ward & Stack and Launer, Chaffee, Hanna, Ward, Stack & Langhauser for Objectors and. Appellants.

James E. Walker and Blodget, Gilbert & Cochran for Claimants and Respondents.

SHEPARD, J.—This is an appeal from a judgment and decree instructing the testamentary trustee regarding distribution of income.

### FACTS

Laura Norton Brown, a widow, at about the age of 80 years, made her will at Fullerton, California on February 24, 1942. She died June 22, 1943, at age 81. Her only child, Thomas Duffill Brown, died before she made her will, leaving surviving him his wife, Nellie Brown, a natural son, Keith (whom we will hereinafter call Keith, Senior), and an adopted son, Douglas. At the time she made her will there were also two great-grandchildren, Keith, Junior, and Diane Brown Baker, the issue of Keith, Senior. After the will was made three other great-grandchildren were born, also the issue of Keith, Senior. They are Daryl, Sharon and Kendall Brown. There is also one great-great-grandchild, Leslie Ellen Brown, the issue of Keith, Junior.

By her will the testatrix bequeathed the bulk of her estate to a bank as trustee, directing that

(a) the net income be paid in equal parts to her son's widow, Nellie, and her cousin, Harry Duffill, during the lifetime of each;

(b) upon the death of Nellie, her one-half of the net income would be paid to ''her surviving children'';

(c) upon the death of both Nellie and Harry the trust would terminate and the corpus would be distributed to the ''then living. grandchildren of testatrix, those now being Douglas Brown and Keith Brown'';

(d) termination of the trust in any event upon the death

of the last surviving grandchild living at the time of testatrix' decease;

(e) "If their share of the income from this trust to which my daughter-in-law or any *descendants* of mine may be entitled shall in the discretion of the trustee be insufficient to provide her or them with reasonable support," corpus may be invaded for such purpose.

Pertinent events which occurred in the lives of interested parties after the death of testatrix are as follows: Nellie died March 16, 1951; Keith, Junior, died June 8, 1957, leaving one child surviving, Leslie Ellen Brown; Keith, Senior, died in May 1959, leaving surviving children Daryl, Sharon, Diane and Kendall, and one grandchild, Leslie Ellen.

Upon the death of Keith, Senior, the trustee petitioned the court for instructions regarding distribution of income and the trial court decreed that all Nellie's share of the income should go to Douglas. Certain of the children of Keith, Senior, appealed, contending that Keith's share of the income should be distributed to the lineal descendants of Keith, Senior.

### CONFLICT OF EVIDENCE

The first problem is presented by the contention of respondent Douglas that there was a conflict of evidence concerning surrounding circumstances regarding testator's intention in the use of the word "children" as contained in the will and that because there was conflicting evidence on that subject this court is bound by the decision of the trial court.

It is of course the general rule that a trial court's findings on conflicting evidence are to be regarded in the same light as factual findings in any other case. They will not be disturbed if there is substantial evidence to sustain them and reasonable minds might draw the same conclusion therefrom. (*Estate of Taylor*, 175 Cal.App.2d 669 [346 P.2d 884].)

"However, it is also the rule that where no extrinsic evidence is introduced or where there is no conflict in such evidence, the construction of an uncertain provision in a will is a question of law on which the independent judgment of the appellate court is to be exercised. Under such circumstances, there is no issue of fact and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law. (*Estate of Platt*, 21 Cal.2d 343, 352 [4] [131 P.2d 825]; *Estate of Wunderle*, 30 Cal.2d 274, 280 [6] [181 P.2d 874].)" (*Estate of Helfman*, 193 Cal. App.2d 652, 654 [1] [14 Cal.Rptr. 482].)

■ We are not here confronted with evidence of the conflicting nature presented in the *Taylor* case. Nothing in the evidence here indicates any preference between Keith, Senior, and Douglas nor the heirs of one of them. The evidence from the heirs of Keith, Senior, indicated a friendly disposition on the part of the testatrix' toward the great-grandchildren. Douglas then produced in purported rebuttal two undated letters written by the testatrix. One was to Nellie, dated August 10, possibly written as late as 1942. In it the testatrix relates usual matters of family interest and comments that she is not well enough to have strangers; that she has not invited Keith to come to see her; that he is a stranger to her. She further comments, "I could not possibly have *children* here." In a letter to Douglas, apparently written some months later than the one to Nellie, she evinces the normal goodwill of a grandmother toward a grandson. The only hint of testamentary intent contained in either letter is the statement, referring to the 23½-acre orange grove property on which she lived, "Some day you & Keith will own it all & perhaps you may live here."

It must be remembered that at this time the testatrix was approximately 80 years of age and in failing health. Her comment about not having children in her home was not directed at Keith's children particularly but at children generally. Obviously in her failing health and age this indicates nothing more than her recognition that her condition did not admit of that nervous resilience necessary to stand the noise and movement common to small children generally. Her comment respecting Keith and Douglas "owning it all" shows no intent to distinguish between the ordinary objects of her family bounty. On the contrary it indicates an intent that each should share equally in the ultimate ownership of her home.

Thus it is clear that the extraneous evidence does not support any reasonable inference that the testatrix intended any different treatment as between her lineal heirs. We can find no merit in the contention that this court is bound by the finding of the trial court. There was no such conflicting evidence as would cause such a result.

### General Rules of Interpretation

Douglas here contends that the will shows an unequivocal intent on the part of the testatrix that upon the death of Keith all of Nellie's one-half share of the net income be paid to him and that upon the death of Harry Duffill the trust shall termi-

nate and all of the trust estate thereupon be distributed to Douglas. We cannot agree that the will compels the conclusion that Nellie's one-half share of the income should go solely to Douglas.

On examining the will it is well to bear in mind some of the primary rules of construction that have been built up through legislative enactment and judicial decisions, for they form the nucleus of our California public policy on the subject.

The legislative policy of our state has been to guide distribution of the property of a deceased into the lineal lines of descent per stirpes, unless there be a clear contrary intent shown by the will. (Prob. Code, § 92; *Estate of Frinchaboy,* 108 Cal.App.2d 235 [238 P.2d 592].) Unintentionally omitted children or grandchildren are protected by Probate Code section 90 if they do not inherit under the provisions of section 92. (*Estate of Todd,* 17 Cal.2d 270 [109 P.2d 913].) The law leans toward that construction of a will which favors those who would take by heirship without a will. (*Estate of Wilson,* 65 Cal.App. 680, 689 [2] [225 P. 283]; *Estate of Rutan,* 119 Cal.App.2d 592, 602 [6] [260 P.2d 111].) *Estate of Torregano,* 54 Cal.2d 234, 248 [12] [5 Cal.Rptr. 137, 352 P.2d 505]:

"Since its origin as a state, California has continuously protected both spouse and children (and to some extent, grandchildren) from unintentional omission from a share in testator's estate. Such protection, unknown to the common law, has been provided by statute, commencing with the Acts of 1850, continued by various sections of the Civil Code, and today appearing in sections 70, 71, 90, 91 and 92 of the Probate Code. Thus the Legislature has indicated a continuing policy of guarding against the omission of lineal descendants by reason of oversight, accident, mistake or unexpected change of condition."

The overall guiding star of will interpretation is to effectuate the intent of the testator as shown by the testator's language. (Prob. Code, § 101; *Estate of Akeley,* 35 Cal. 2d 26, 28 [1] [215 P.2d 921, 17 A.L.R.2d 647]; *Estate of Lefranc,* 38 Cal.2d 289, 295 [1] [239 P.2d 617]; *Estate of Thompson,* 50 Cal.2d 613, 617 [4] [328 P.2d 1].) In arriving at a testator's intent the entire context of the will must be examined in the light of the surrounding facts and circumstances. (*Estate of Marré,* 18 Cal.2d 184, 188 [3a] [114 P.2d 586]; *Brock* v. *Hall,* 33 Cal.2d 885, 889 [5] [206 P.2d 360, 11

A.L.R.2d 672] ; *Estate of Nielsen,* 169 Cal.App.2d 297, 305 [7] [337 P.2d 87].) In one sense, of course, as was pointed out by Professor Wigmore, evidence of attendant facts is inevitably necessary in every case in order to relate the words of the will to persons and facts of which the will speaks. (*Estate of Helfman, supra,* at p. 654 [1] ; *Paley* v. *Superior Court,* 137 Cal.App.2d 450, 456 [1] [290 P.2d 617].)

Of course, as has been said in many cases, including *Estate of Watts,* 179 Cal. 20 [175 P. 415], and quoted in *Estate of Axcelrod,* 23 Cal.2d 761, 766 [1] [147 P.2d 1], ". . . the paramount rule.[is] that the ultimate question is the intention of the testator as expressed in the will, and that technical rules of interpretation must yield to an intention clearly expressed. The real question . . . is, What did the testator mean in view of the language he has used in his will, in the light afforded by certain rules of interpretation which must prevail where a contrary intent does not clearly appear on the face of the will? Such is the question here involved. We have said : 'Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value. Except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills.' "

By a succession of legislative enactments and judicial decisions this state has gradually eliminated nearly all of the inequities formerly attaching to an adopted child, so that he now stands on a substantially equal footing with the natural child insofar as inheritance from his adoptive parents is concerned. Heretofore, judicial decisions and legislative enactments have been principally occupied with bolstering and confirming that equality. (*Estate of Dolan,* 169 Cal.App.2d 628 [337 P.2d 498].) But in the case at bar the problem with which we are presented is somewhat in the reverse. Here, Douglas, the adopted child, not content with his equal share per stirpes, now seeks an interpretation of the will which would not only give him all of the income allotted to himself and his brother, but also asserts the right to all of the corpus of the whole estate to the complete exclusion of lineal heirs of his brother, on termination of the trust. He asserts that the term "children" was used in the restrictive sense so as to exclude all of the lineal descendants of his brother, who was the only natural grandson of the testatrix. Thus he also attempts to exclude all lineal *descendants* of the testatrix.

### ANALYSIS OF WILL

 Looking at the whole of the will in the light of the attendant facts and circumstances, we find that at the time the will was made, testatrix was about 80 years of age. Nellie was the widow of her only son, long since deceased, and Nellie was then about 58 years of age. Harry Duffill, cousin of the testatrix, was about 62. Keith, Senior, was about 30. Douglas (actually no relation to testatrix), (*In re Darling*, 173 Cal. 221 [159 P. 606]) recognized by her as a grandson by adoption, was about 32. Keith, Junior, was then 11 and Diane was 4.

In her will, testatrix said, "I have two grandsons, Douglas Brown and Keith Brown, and a daughter-in-law, their mother, Nellie Brown." The testatrix left her estate in trust with the income devoted to the support of Nellie and Harry Duffill during their lifetimes. She provided that upon Nellie's death, Nellie's half of the income be paid to Nellie's surviving children and that upon the death of both Nellie and Harry, the remainder of the trust estate be delivered to her then living grandchildren, "those now being Douglas Brown and Keith Brown." She then provided that the trust would not extend beyond the death of the last surviving grandchild living at her death.

At first blush these provisions would appear to carry the usual connotations of children and grandchildren, but closer examination of the whole will presents anomalies making such a construction entirely unreasonable if the whole circumstances and the words of the will are properly appraised. By paragraph (e), the testatrix provided that, "If their share of the income from this trust to which my daughter-in-law or any *descendants* of mine may be entitled, shall in the discretion of the trustee be insufficient to provide her or *them* with reasonable support, care and comfort," the corpus of the trust might be invaded for such purposes (italics ours). By her use of the word "descendants" in this support clause, the testatrix identifies and defines what was meant by "children" and "grandchildren" on distribution of income. Any future child by Nellie would not be a *descendant* of the testatrix for the testatrix' son was long since deceased. Only children, grandchildren or their *descendants* through Keith, Senior, or Douglas could possibly be considered *her descendants*. Furthermore, Nellie, then about 58 years of age, was already way past the age of normal childbearing expectancy. While she might possibly have adopted another child, this eventuality does not appear, from the whole circumstances and the will.

to have been within testatrix' contemplation. Her primary concern clearly appears to have been for the support of Nellie and Harry, and yet, in spite of this, she inserted the unnecessary saving clause that the trust should in any event terminate upon the death of her last surviving grandson living at the time of her death. The result is that if Nellie or Harry survives both Keith, Senior, and Douglas, and if the term "grandchildren" as used in paragraph (c) is construed in the restricted sense, complete intestacy would result. ▇▇▇ As was said in *Estate of Heard*, 25 Cal.2d 322, 326 [1] [153 P.2d 553];

"Under our statutes and decisions a will must be construed according to the intention of the testator as gathered from the language used in the entire will, effect must be given to the expressed intention so far as possible and intestacy must be avoided where and to the extent the expressed intention makes this possible."

▇▇▇ It is true that the words "children" and "grandchildren" will be interpreted in their ordinary restricted sense where nothing in the will and attendant circumstances indicates a different meaning. (*Estate of Wilson*, 171 Cal. 449 [153 P. 927]; *Estate of Vizelich*, 129 Cal.App. 347 [18 P.2d 773].) However, when the words of a will, read in the light of the attendant facts, reasonably show intent to give the broader meaning of descendants, the courts will not hesitate to give such broader construction when it will effectuate the intent of the testatrix. (*In re Schedel*, 73 Cal. 594, 598 [15 P. 297]; *Rhoton* v. *Blevin*, 99 Cal. 645, 648 [3] [34 P. 513]; *Estate of Heberle*, 155 Cal. 723 [4] [102 P. 935]; *Estate of Craig*, 64 Cal.App.2d 132, 139 [3] [148 P.2d 100]; *In re Carnegie's Estate*, 397 Pa. 308 [155 A.2d 349]; *In re Clark's Estate*, 359 Pa. 411 [59 A.2d 109, 114 [6-7]]; *Pfender* v. *Depew*, 136 App. Div. 636 [121 N.Y.S. 285, 287]; *In re Blodgett's Will*, 250 App.Div. 324 [294 N.Y.S. 358, 366 [8, 9]]; *In re Harrison's Will*, 190 Misc. 215 [73 N.Y.S.2d 162, 166 [6-8]]; *Ryan* v. *Herbert*, 186 Md. 453 [47 A.2d 360, 364 [7]]; *Davis* v. *Mitchell*, 27 Tenn.App. 182 [178 S.W.2d 889, 904 [24-26]]; *Cooper* v. *Birmingham Trust & Savings Co.*, 248 Ala. 549 [28 So.2d 720, 725-726 [1-3]]; *In re Works' Estate*, 168 Kan. 539 [213 P.2d 998, 1001 [7-8]]; *Davis Trust Co.* v. *Elkins*, 114 W.Va. 742 [175 S.E. 611, 613 [2-3]].)

▇▇▇ Thus we find that the only construction that will reasonably give full effect to all of the words of the will is to use the terms "children" and "grandchildren" as contained

in the dispositive portions of the will in the broader sense of lineal descendants. Without such interpretation, anomalies appear that cannot be explained and portions of the will must be completely ignored. Using such broader meaning, the will follows the policies of interpretation encouraged by our legislative policy and the normal course of natural disposition; each part of the will fits comfortably into place and it becomes a reasonably consistent whole. We so construe it.

We express no opinion on the ultimate disposition of the corpus after termination of the trust. That question was not presented by the pleadings, the events calling for such decision have not happened and the question is not properly before us.

In view of the opinion thus expressed, we find it unnecessary to discuss other points raised by appeal.

The judgment and decree are reversed and the trial court is directed to enter its order in accordance with the views thus set forth.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied February 9, 1962, and the petition of respondent Douglas Brown for a hearing by the Supreme Court was denied March 14, 1962. Schauer, J., Peters, J., and Dooling, J., were of the opinion that the petition should be granted.